**K. Kay SHEARIN, Appellant,**

v.

**The E.F. HUTTON GROUP, INC., E.F. Hutton & Company Inc. and E.F. Hutton Trust Company, Appellees.**

No. 89–3230.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6), July 27, 1989.

Decided Sept. 20, 1989.

As Amended Oct. 11, 1989.

---

K. Kay Shearin, Wilmington, Del., pro se.

Stephen E. Herrman, Anne C. Foster, Richards, Layton & Finger, Wilmington, Del., for appellees.

Before GIBBONS, Chief Judge, HUTCHINSON, Circuit Judge, and REED, District Judge.*

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Plaintiff K. Kay Shearin, a former employee of E.F. Hutton Trust Company (Hutton Trust), appeals from a judgment dismissing her amended complaint against Hutton Trust, E.F. Hutton & Company Inc. (Hutton Inc.) and The E.F. Hutton Group, Inc. (Hutton Group). The complaint alleges that the defendants violated the Racketeer Influenced and Corrupt Organizations statute (RICO), 18 U.S.C. §§ 1961–1968 (1989), in four respects, and that those violations injured her in a manner for which that act provides a remedy. 18 U.S.C. § 1964(c). The district court held that, assuming her amended complaint properly pleaded violations of 18 U.S.C. § 1962, Shearin lacked standing to assert a claim under 18 U.S.C. § 1964 for damages for

* Hon. *Lowell A. Reed, Jr.,* United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

any such violations. We conclude that while the district court properly dismissed with respect to three of the alleged violations, it erred in holding that Shearin lacks standing to pursue a civil RICO remedy for the alleged violation of 18 U.S.C. § 1962(d). Thus we will reverse the judgment appealed from and remand for further proceedings.

## I.

Shearin's amended complaint alleges that on April 30, 1984, she was hired by Hutton Trust as Trust Counsel, Corporate Secretary, and Assistant Vice President. Hutton Trust is a limited purpose trust company organized under Del.Code Ann. tit. 5, §§ 773–779 (1988), with its principal place of business in Wilmington, Delaware. Hutton Trust and Hutton Inc., a brokerage firm, were at relevant times wholly-owned subsidiaries of Hutton Group. In April of 1985 Shearin was promoted to Vice President of Hutton Trust. On March 6, 1986, she was dismissed.

Shearin alleged that Hutton Inc. and Hutton Group agreed upon a scheme whereby Hutton Trust would be created as a front for the purpose of charging fees to customers of Hutton Inc. for trust services which were never performed, thereby bilking customers of the brokerage firm. Pursuant to this scheme, Shearin alleges, she was induced by telephone and mail to leave her previous employment and enter into an employment contract with Hutton Trust so that it would have the facade of a genuine trust company. In March of 1986, she alleges, she was abruptly dismissed in order to prevent her from making disclosures about the defendants' illegal activities to the Delaware bank examiners.

Shearin pleads that the defendants have thereby violated 18 U.S.C. § 1962(a), (b), (c) and (d). These violations are actionable, she pleads, under 18 U.S.C. § 1964(c), which provides:

1. The district court purported to convert the defendants' motion to dismiss Shearin's amended complaint into a motion for summary judgment. Since the ground for dismissal was pure-

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Recovery under section 1964(c) thus requires the pleading of (1) a section 1962 violation, and (2) an injury to business or property by reason of such violation. The latter pleading requirement is in common parlance referred to as RICO standing.

Our review of the dismissal of Shearin's complaint is plenary.[1] Accepting Shearin's allegations as true we must determine whether she has alleged any set of facts which would entitle her to recover under 18 U.S.C. § 1964(c).

### A. Shearin Pleaded RICO Violations

Shearin alleges that the defendants (1) used money derived from a pattern of racketeering to invest in an enterprise, 18 U.S.C. § 1962(a); (2) conducted an enterprise through a pattern of racketeering, 18 U.S.C. § 1962(c); and (3) conspired to violate sections 1962(a) and (c) in violation of 18 U.S.C. § 1962(d).

#### (1) Section 1962(a)

Shearin's complaint adequately alleges that the Hutton companies used money derived from a pattern of racketeering to invest in an enterprise. The statute in relevant part provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of any unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, in acquisition of any interest in, or the establishment or operation of, any

ly legal, the scope of appellate review is the same whether the action of the court is regarded as a Fed.R.Civ.P. 12(b)(6) or a Fed.R.Civ.P. 56 ruling.

enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). Under this provision a plaintiff must allege: (1) that the defendant has received money from a pattern of racketeering activity, and (2) invested that money in an enterprise; and (3) that the enterprise affected interstate commerce. *B.F. Hirsch, Inc. v. Enright Refining Co.,* 617 F.Supp. 49, 51–52 (D.N.J.1985); *see Gilbert v. Prudential–Bache Sec., Inc.,* 643 F.Supp. 107, 109 (E.D.Pa.1986).

At least two paragraphs of Shearin's amended complaint set out the receipt of money from the pattern of racketeering activity. Paragraph 15 states that during Shearin's employment, Hutton Inc. employees collected fees charged for Hutton Trust's services. ¶ 15(e). To the extent that the Hutton Group owned Hutton Inc. and ostensibly established Hutton Trust to get such fees, a liberal inference is that the parent received at least some of these illicit funds as well. ¶ 13. Finally, the complaint indicates that Hutton Trust also received illicit funds in its own right in collecting fees from trusts established outside Delaware. ¶ 15(i). Each defendant thus received funds from the scheme according to the facts alleged.

The complaint also indicates investment in the Huttons' tripartite enterprise. Paragraph 15 alone suffices in alleging that Hutton Inc. employees transferred the Hutton Trust fees they collected into Hutton Inc. accounts. In this way, an investment went to one of the three constituent members of the fraudulent association. ¶ 15(e). Any degree to which it can be inferred that the Hutton Group ultimately retained funds from Hutton Trust via Hutton Inc. merely bolsters the investment allegation. ¶ 13.

Contrary to the district court's dicta, the enterprise and the individual defendant need not be distinct for the purposes of section 1962(a). *Petro–Tech, Inc. v. Western Co. of N.A.,* 824 F.2d 1349, 1360 (3d Cir.1987).

### (2) Section 1962(c)

Shearin alleges that the defendants conducted an enterprise through a pattern of racketeering. The statute provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). There are four elements under this provision necessary to make out a claim; a plaintiff must allege (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that he or she participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts. *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1352 (5th Cir.1985); *see also Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Given this Court's lenient standard in reviewing complaints, Shearin's allegations pass muster on each item. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

Shearin pleaded the existence of an enterprise. Paragraph 14 of the complaint states that "the association of Hutton Group, Hutton Inc., and Hutton Trust ... was an enterprise under 18 *U.S.C.* 1861(4) [sic]." This allegation fits the statutory definition of an enterprise as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Interpretation of this term has been liberal, and nothing precludes an association of corporations for illicit purposes from constituting an enter-

prise. *See, e.g., United States v. Feldman,* 853 F.2d 648, 655 (9th Cir.1988). Shearin did not expressly allege that the enterprise has affected interstate commerce, but that failure is immaterial. The requirement may be reasonably inferred from the interstate nature of Hutton Inc., ¶ 3, and from Hutton Inc.'s alleged misrepresentations that Hutton Trust was authorized to do business outside the state of Delaware, ¶ 15(i) & (j). The interstate requirement is *de minimis* in any case. *See, e.g., R.A. G.S. Couture,* 774 F.2d at 1353.

Shearin by definition met the association requirement in pleading that the three Hutton companies associated to form an enterprise, ¶ 14. Beyond this, many of the allegations of their participation in the affairs of the enterprise also go to their continuing association with it. The complaint makes ample allegation, general and specific, of the three companies' participation in and conduct of the affairs of their tripartite enterprise. These allegations include: the payment of Hutton Trust employees with Hutton Inc. funds, ¶ 15(b); the participation of Hutton Trust employees in benefit plans of Hutton Inc. and the Hutton Group, ¶ 15(c); the collection of fees for Hutton Trust services by Hutton Inc. employees, ¶ 15(e); Hutton Trust's withholding of information from state examiners to protect the fraudulent enterprise that included Hutton Inc. and the Hutton Group, ¶ 16; and Hutton Trust's hiring of individuals to maintain the facade of a legitimate corporation, ¶¶ 17 & 18.

Finally, Shearin has pleaded a pattern of racketeering. Though she has failed to specify statutory provisions, the complaint does allege that the practices and incidents set forth violated Federal securities and mail fraud statutes. These fall within the definition of racketeering activity under section 1961(1). They also constitute a pattern. The section 1961(5) definition requires at least two racketeering acts before a pattern can be established. The Supreme Court has refined this by emphasizing the need to show the continuity and relationship between the discrete racketeering activities. *H.J. Inc. v. Northwestern Bell Telephone Co.,* — U.S. —, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. This Court has further developed the inquiry to include a multifactor approach that considers the number of acts, the length of time involved, the similarity of the acts, the number of victims, the number of perpetrators, and the nature of the activities. *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (3d Cir.1987); *see Marshall–Silver Construction Co. v. Mendel,* 835 F.2d 63, 65–67 (3d Cir.1987), *vacated and remanded,* — U.S. —, 109 S.Ct. 3233, 106 L.Ed.2d 582 (1989); *Swistock v. Jones,* 884 F.2d 755 (3rd Cir.1989). *Barticheck* also recognized that a RICO pattern may be adequately pleaded if at least two ultimate schemes, or one scheme that is open-ended, is alleged. 832 F.2d at 39. Here the complaint describes three perpetrators involved in at least one open-ended scheme to defraud presumably numerous investors and, problematically, honest employees as well—a scheme that lasted at least the length of Shearin's two years with Hutton Trust. ¶¶ 9, 13–26.

### (3) Section 1962(d)

■ Shearin also properly pleaded that the Hutton Group, Hutton Inc., and Hutton Trust conspired to violate the subsections preceding subsection (d). RICO provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(d). To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose. *Kalmanovitz v. G. Heileman Brewing Co.,* 595 F.Supp. 1385, 1400–01 (D.Del.1984), *aff'd,* 769 F.2d 152 (3d Cir.1985); *James Julian, Inc. v. Raytheon Co.,* 499 F.Supp. 949, 955 (D.Del.1980); *see Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 790–91 (3d Cir. 1984). Additional elements include agreement to commit predicate acts and knowl-

edge that the acts were part of a pattern of racketeering activity. *Odesser v. Continental Bank*, 676 F.Supp. 1305, 1312–13 (E.D.Pa.1987).

The complaint sufficiently sets forth a time period. Shearin expressly claims that the three corporations jointly conducted their illicit scheme during the time of her employment—April 30, 1984, to March 6, 1986—at the very least. ¶¶ 9, 14, 15. The complaint also indicates that the conspiracy necessarily predated Shearin's hiring insofar as the Hutton Group initially created Hutton Trust as a front for securities fraud, and Hutton Trust dutifully hired Shearin, wooing her away from her previous job in early April of 1984 as window dressing. ¶¶ 13, 16, 17.

The complaint also expressly addresses the object of the conspiracy. Shearin alleges that the three companies joined forces "to collect fees for performing fiduciary services that Hutton Inc. was prohibited, by state banking laws and state and federal securities laws, from performing, so that the profits would flow to Hutton Group." ¶ 14.

Since the association of the three companies in effect amounted to the conspiracy, the numerous acts set forth showing racketeering activity also serve as actions taken in furtherance of that conspiracy. ¶¶ 15, 16. In addition, Shearin alleges certain actions that in themselves are not racketeering activity, but also served to further the conspiracy. These primarily involve Hutton Trust's initial hiring of Shearin, its discharge of Shearin, and its orders to her to cover up facts from investigators in the interim. ¶¶ 17–23.

Lastly, the nature of the Hutton companies' association also gives rise to a necessary inference that all three parties not only agreed to the ongoing securities fraud scheme, but that all three were aware that ongoing acts, such as the unlawful collection of fiduciary fees, were part of an overall pattern of racketeering activity.

### B. Shearin's Complaint Alleges a Section 1964(c) Injury

Since her complaint sufficiently alleges three separate violations of 18 U.S.C. § 1962, we must next consider whether it alleges an injury to her business or property within the meaning of 18 U.S.C. § 1964(c). The injuries she pleads are the loss of her former job and the loss of her job at Hutton Trust. These separate injuries require separate analysis.

The starting point for analysis of civil RICO standing under section 1964(c) is the Supreme Court's opinion in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), in which the Court read that section as requiring that the injury relied on by a plaintiff be the result of a section 1962 violation. According to the Court:

> [A] plaintiff only has standing if, and can recover only to the extent that, he has been injured in his business or property by the conduct constituting the violation. As the Seventh Circuit has stated, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured."

473 U.S. at 496–97, 105 S.Ct. at 3285 (citation omitted). The Court further opined that a valid RICO injury necessarily stems from "predicate acts" that underpin the section 1962 violation. In the Court's own words:

> Where a plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.

473 U.S. at 497, 105 S.Ct. at 3285. Earlier, the Court specified "predicate acts" to mean those included as racketeering activity in the catalogue of crimes found in section 1961(1). 473 U.S. at 495, 105 S.Ct. at 3284.

### (1) The Section 1962(a) and (c) Violations

■ Applying the *Sedima* standard for civil RICO standing, we conclude, as did the district court, that Shearin has failed to plead injury resulting from defendants' vio-

lations of sections 1962(a) or (c). Shearin contends that Hutton caused her injury first in hiring her away from her previous job in Washington, D.C., and then in firing her from Hutton Trust when she refused to play the good soldier. Neither job loss can fairly be said to have resulted from violations of any of RICO's first three subsections or from the predicate acts necessary to establish these. The investment of unlawfully collected fees did not cause Shearin to lose her jobs. Nor did the securities and wire fraud through which the three companies ostensibly conducted their illicit enterprise. Nor, had it been properly pleaded, did the acquisition of the enterprise through the securities fraud scheme, 18 U.S.C. § 1962(b), cause Shearin's hiring or firing.[2] More precisely, in none of these instances did any predicate act, which in this non-conspiracy context does mean section 1961(1) racketeering activity, cause the injuries of which Shearin complains.

The only possible exception to this conclusion is the allegation that Hutton Trust fraudulently hired Shearin in part by means of an interstate phone call. ¶ 18. If proven, this allegation might constitute wire fraud under 18 U.S.C. § 1343, an enumerated racketeering activity under RICO's section 1961(1). Nonetheless, as the district court correctly noted, the relation of the alleged fraudulent hiring to the actual securities fraud scheme is too attenuated to be considered part of the same pattern of racketeering activity.

Shearin unsuccessfully attempts to bootstrap the hiring fraud by maintaining that the defendants engaged in no mere siphoning operation, but erected Hutton Trust with no legitimate purpose whatsoever. This attempt fails on at least two elements set forth in *Barticheck*. First, the other acts alleged—collecting unlawful fees, hiding securities information, misrepresenting corporate duties to customers—are dissimilar from the act of fraudulently wooing an employee at one company to be corporate counsel at another. More significantly, the distinctive character of the unlawful activi-

ty set out was securities fraud. For all the complaint's conclusory language, only the hiring allegation goes directly to the theory that Hutton Trust was no more than a mere facade. *See Barticheck*, 832 F.2d at 38–39. Perhaps allegations of other concrete acts to show the Hutton's erection of a mere facade—as opposed to the abuse of a duly constituted trust company—might suffice to integrate the two scenarios. But without more to overcome the foregoing *Barticheck* hurdles, and nothing appears in the amended complaint, Shearin's allegations are no more than conclusory. Nor, without more, does the hiring itself count as a pattern of racketeering since only one act is alleged, and nothing about that appears part of an open-ended fraudulent hiring scheme. The question is academic in any case since, as will appear more fully, Shearin cannot claim damages for job loss in being hired for a job in which she worked for two years, received due compensation, and even garnered a promotion. If, therefore, the Hutton companies' predicate acts under section 1962(a) or (c) injured anybody, they injured those Hutton customers whom the securities scheme defrauded.

### (2) The Section 1962(d) Violation

■ But while the section 1962(a) and (c) violations she alleges injured only customers, that is not so with respect to the alleged section 1962(d) conspiracy. Shearin contends Hutton Trust hired her as window dressing to perpetuate the fraud that it was a legitimate company. She also claims that she was fired to preserve the same fraud when she stated she would not participate. These acts may not qualify as predicate acts for section 1962's first three subsections, but they do for the fourth. Shearin's hiring and firing plausibly constitute overt acts that not only would establish a conspiracy, but in this case were allegedly essential to it. Assuming that the hiring and firing were injuries, those

---

**2.** Shearin attempts to plead a section 1962(b) violation, but the pleading is, in our view, legally insufficient since she does not allege any nexus between control of the enterprise and the alleged racketeering activity.

injuries did occur "by reason of" the Huttons' violation of section 1962(d).

The *Sedima* court did not apply its civil RICO standing analysis to conspiracy in violation of section 1962(d). Rather, it addressed only violations under section 1962(a), (b) and (c), and had before it only an allegation under section 1962(c). When the Court explained its rationale, moreover, it was preoccupied with refuting the Second Circuit's contention that a plaintiff also had to establish a "racketeering injury." The Court stated:

> Given that "racketeering activity" consists of no more and no less than commission of a predicate act, § 1961(1), we are initially doubtful about a requirement of a "racketeering injury" separate from the harm from the predicate acts. A reading of the statute belies any such requirement. Section 1964(c) authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of § 1962." Section 1962 in turn makes it unlawful for "any person" —not just mobsters—to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity. §§ 1962(a)–(c). If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c).

473 U.S. at 495, 105 S.Ct. at 3284.

Nothing in *Sedima* forecloses the possibility that harm arising from an act predicate to conspiracy, yet distinct from the racketeering acts listed in section 1961(1), might yet confer standing so long as the plaintiff has alleged a violation of section 1962(d). Since none of the other post-*Sedima* precedents the defendants offer address section 1962(d), the same conclusion applies. *See Town of Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263 (3d Cir.1987); *Burdick v. American Express Co.*, 865 F.2d 527 (2d Cir.1989);

*Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201 (1st Cir.1987); *see also Morast v. Lance*, 807 F.2d 926, 932–33 (11th Cir.1987) (RICO "conspiracy" alleged, but no distinction made between "predicate acts" of racketeering activity and those of classic conspiracy). In *Sedima*, the Court correctly reasoned that "racketeering activity" and "predicate acts" amount to the same thing under section 1962's first three subsections. A pleading of investment, acquisition, or participation through a pattern of racketeering necessarily incorporates the prior racketeering activity in alleging RICO violations under section 1962(a), (b) or (c). That is not true of section 1962(d). Predicate acts for conspiracy do not of necessity consist of section 1961(1) racketeering activity. To the contrary, a conspiracy to commit the other RICO violations may occur absent the actual commission of the other violations or the racketeering activities that underpin them. All that need be shown is that the conspirators agreed to engage in a pattern of racketeering activity. *See United States v. Brooklier*, 685 F.2d 1208, 1222 (9th Cir.1982). Acts that further a section 1962(d) conspiracy thus may cause harm even when they do not themselves qualify as racketeering activity. Taking into account all the provisions of section 1962, either racketeering activity or classic overt conspiracy acts may qualify as "predicate acts" to a RICO violation that causes injury.

*Sedima* further indicates that classic conspiracy acts not only may, but should, so qualify. This accords with RICO's plain meaning. Section 1964(c) states that a person need only sustain an injury "by reason of a violation of section 1962" in order to sue. Echoing this language, the Supreme Court expressly required that a person be "injured in his business or property by the conduct constituting the violation"; it did not mandate that racketeering activity cause the harm. 473 U.S. at 497, 105 S.Ct. at 3285. Rather, the Court opined at length that "RICO is to be read broadly," with a view toward "activity which RICO was designed to deter," and so be "liberally construed to effectuate its remedial purposes." 473 U.S. at 497–500, 105 S.Ct. at

3285–3287 (citation omitted). Given this dictate, it would be anomalous to allow plaintiffs to recover for harm suffered from investment in, or control or conduct of, a pattern of racketeering, yet preclude recovery for conspiracy to commit these violations simply because the overt act that furthers the conspiracy does not itself qualify as racketeering.

This analysis, however, holds only with regard to Shearin's firing. In this instance, loss of earnings, benefits, and reputation constitute self-evident injury as in any standard wrongful discharge action. The same cannot be said for her hiring, or as she described it before the district court, the "loss" of her previous employment to take the Hutton job. A fair reading of the complaint indicates that Shearin left her old job based upon representations that she would receive just compensation for her services at Hutton Trust. Nowhere does the complaint imply that Hutton Trust reneged or that she was duped out of her old job only to find herself without a new one. Instead, she worked for Hutton Trust for two years, gaining a promotion in the bargain.

We hold, therefore, that the allegation that Shearin was fired in furtherance of a conspiracy in violation of 18 U.S.C. § 1962(d) states a claim for relief under section 1964(c).

## II.

Shearin's complaint, insofar as it alleges that she was terminated from her employment by Hutton Trust in furtherance of a conspiracy in violation of 18 U.S.C. § 1962(d) states (1) a violation of that subsection and (2) an injury in her business or property for which recovery may be sought under 18 U.S.C. § 1964(c). The judgment appealed from will to this extent be reversed, but will in other respects be affirmed.