Rebecca RODRIGUEZ, et al.

v.

Michael McKINNEY, et al.

No. 93 Civ. 1996.

United States District Court,
E.D. Pennsylvania.

March 13, 1995.

---

Alan White, Community Legal Services Inc., Philadelphia, PA, for plaintiff.

John Rogers Carroll, Carroll & Carroll, Philadelphia, PA, for defendant.

### MEMORANDUM

ANITA B. BRODY, District Judge.

Before me is defendant's motion for summary judgment in this class action brought under 18 U.S.C. § 1964(c), the provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO") that confers a private right of action on any person whose business or property is injured "by reason of" another's violation of that Act. The principal issue to be decided here is whether, as a matter of law, the causal connection between defendant's alleged actions and plaintiffs' claimed injuries is insufficient to satisfy RICO's proximate cause requirement. I conclude that it is not and that the causation issue must therefore be submitted to the trier of fact. Accordingly, I will deny defendant's motion for summary judgment.[1]

## I.  BACKGROUND

The following facts are either undisputed or represent plaintiffs' version of events un-derlying this litigation. Plaintiffs are students who were admitted without a high school diploma or its equivalent to one of three trade schools operated by a corporate entity defendant controlled called Educom, which later changed its name to CareerCom. Plaintiff class members allege that, by reason of defendant's fraud on the United States Department of Education ("DOE"), they enrolled in a course of study at defendant's schools that left them saddled with tuition debt but without the training and job placement services they were promised.

Under federal law, a student may not attend a trade school using the federal financial assistance provided by the guaranteed student loan ("GSL") program unless both the student and the school meet certain requirements. 20 U.S.C. § 1077. Among these requirements is the mandate that students who, like plaintiffs, are admitted to a school without having obtained a high school diploma or a general education diploma ("GED") be determined to have the "ability to benefit" from the school's courses. 20 U.S.C. § 1091. This "ability to benefit" determination is made by the school, 20 U.S.C. § 1085, and is arrived at by administering "a nationally recognized, standardized or industry developed test, subject to criteria developed by the appropriate accrediting association." 20 U.S.C. § 1091(d)(3)(A).

Plaintiffs claim that defendant fraudulently certified to DOE that his schools complied with these "ability to benefit" requirements and were thus eligible to participate in the GSL program when in fact the schools were using artificially low cut-off scores on their entrance examinations and thereby qualifying for assistance students who, like plaintiffs, did not have the "ability to benefit" from the schools' courses. Based on this fraudulent certification, plaintiffs contend, DOE guaranteed student loans to be incurred by plaintiffs for the purpose of attending defendant's schools. Plaintiffs then in-

---

1. By "motion for summary judgment," I refer, where the context renders appropriate, both to that motion and to defendant's separate document entitled "Motion to Dismiss Claims Based on School Closing or for Partial Summary Judgment," which asserts an additional ground for summary judgment on the RICO claims advanced by a particular sub-group of the plaintiff class. That sub-group is comprised of plaintiffs who attended the Watterson School of Business and Technology but were unable to complete their course of study due to the school's closure.

curred such loans to pay tuition to defendant's schools for what plaintiffs allege was worthless training and job-placement assistance.

The named plaintiffs here, Rebecca Rodriguez and Tene Freeman, were students at one of defendant's schools, the Watterson School of Business and Technology. Rebecca Rodriguez, who enrolled in a medical assistant's course there in 1988, had not yet earned a high school diploma or GED, and was admitted as an "ability to benefit" student based on her score of 10 out of 40 on the "ASSET" admissions test. She withdrew from the course after only six weeks and later obtained a GED. At the time of this suit, she had an outstanding GSL debt of $1600 from her enrollment in Watterson. Tene Freeman enrolled in the same course at Watterson in 1991, and was also admitted as an "ability to benefit" student based on her score of 118 on the "CPAT" test. She completed her course work, but Watterson closed before she received any placement services. At the time of this suit, she had not found work in her chosen field and owed $2625 from her enrollment at Watterson.

Plaintiffs have brought suit under RICO's private action provision, 18 U.S.C. § 1964(c), alleging that defendant's conduct amounts to a pattern of racketeering in violation of 18 U.S.C. § 1962(c). The predicate racketeering acts alleged are principally acts of mail fraud, although plaintiffs also allege wire fraud and bank fraud. As relevant here, plaintiffs claim that the false certifications and subsequent steps in defendant's fraud were accomplished through multiple mailings in violation of the mail fraud statute, 18 U.S.C. § 1341, including mailings of: (i) eligibility certification forms and responses to evaluations and program reviews, all sent by defendant's schools to DOE; and (ii) checks representing guaranteed student loans, all sent by various GSL lenders to plaintiffs. Plaintiffs have also pleaded violations of RICO's conspiracy provision, 18 U.S.C. § 1962(d).

I addressed plaintiffs' motion for class certification in my Memorandum of June 6, 1994. *Rodriguez v. McKinney*, 156 F.R.D. 112 (E.D.Pa. June 6, 1994). On July 8, 1994,

I certified this claim as a class action pursuant to Fed.R.Civ.P. 23(b)(3). *Rodriguez v. McKinney*, 156 F.R.D. 118 (E.D.Pa.1994). Now I take up defendant's summary judgment motion, which contends chiefly that the causal nexus between defendant's alleged fraud on DOE and plaintiffs' enrollment in defendant's schools is so attenuated that, as a matter of law, proximate cause cannot be established. I first consider, and reject, defendant's proximate cause argument. Afterwards, I list, for completeness' sake, defendant's remaining contentions in support of his motion, which, because they are without merit, I dispose of summarily.

## II. DISCUSSION

Summary judgment may be granted only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences drawn in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is "genuine" if a reasonable trier of fact could possibly find in the nonmoving party's favor with respect to that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is material if it influences the outcome under governing law. *Id.* at 248, 106 S.Ct. at 2510. If there is any doubt as to whether a trial is necessary, summary judgment should not be granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330–33, 106 S.Ct. 2548, 2556–57, 91 L.Ed.2d 265 (1986).

### A. *Proximate Cause*

The section of RICO that confers a private action provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of [RICO] may sue therefor in any appropriate United States district court and may recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Plaintiffs allege violations here of § 1962(c) and § 1962(d) of RICO. Proof of a violation of § 1962(c), which makes it unlawful to conduct the affairs of an enterprise through a pattern of

racketeering activity, requires a showing of the following elements: (i) the existence of an enterprise affecting interstate commerce; (ii) the defendant's employment or association with that enterprise; (iii) the defendant's participation, either directly or indirectly, in the conduct or affairs of the enterprise; and (iv) that the defendant participated through a pattern of racketeering activity, including at least two predicate racketeering acts. *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165 (3d Cir.1989); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The principal predicate acts of racketeering alleged here are mail fraud violations. *See* 18 U.S.C.A. § 1961(1)(B) (West Supp.1994) (defining "racketeering" to include predicate acts of mail fraud). § 1962(d) outlaws any conspiracy to violate the other subsections of § 1962, and requires a plaintiff to plead and prove the period of the conspiracy, the object of the conspiracy, and the actions taken to achieve the conspiracy's purpose. *Shearin*, 885 F.2d at 1166.

■ The "by reason of" language in § 1964(c) is the source of RICO's proximate cause requirement. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268–69, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). A RICO violation is said to have proximately caused an injury if the violation is "a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Prudential Ins. Co. of Am. v. United States Gypsum Co.*, 828 F.Supp. 287, 293 (D.N.J.1993) (internal quotations omitted); *Brittingham v. Mobil Corp.*, 943 F.2d 297, 304 (3d Cir.1991). This proximate cause inquiry requires a court to consider "such factors as the foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the causal connection." *Prudential Ins. Co.*, 828 F.Supp. at 293 (internal quotation omitted); *Brandenburg v. Seidel*, 859 F.2d 1179, 1189 (4th Cir.1988).

The Supreme Court's decision in *Holmes* illustrates the interplay of foreseeability and intervening harm in the proximate cause analysis. In *Holmes*, the Securities Investor Protection Corporation ("SIPC"), in its role as receiver of a securities firm bankrupted by the purchase of artificially inflated securities, attempted to sue the principals of the securities' issuer alleged to have masterminded the fraud. *Holmes*, 503 U.S. at 270–71, 112 S.Ct. at 1319. The customers on whose behalf SIPC attempted to sue, however, were those that had *not* purchased the inflated securities but had incurred losses when the firm failed and could no longer meet obligations to any of its clients. *Id.* The Supreme Court rebuffed SIPC's attempt on proximate cause grounds, reasoning that, because the claim arose purely out of the firm's general inability to meet customer obligations, only the firm's "intervening insolvency" and not the issuer defendants' fraud could be considered the direct cause of the loss. *Id.*

Intuitively, the facts presented in *Holmes* make it a compelling case for the result reached there. The *Holmes* Court recognized, however, that judges would often be called upon to apply the proximate cause requirement in substantially more shaded factual situations. 503 U.S. at 272–73 n. 20, 112 S.Ct. at 1320 n. 20. The Court thus undertook to anchor the proximate cause requirement of RICO in the following tripartite policy rationale: (i) the less direct an injury, the more difficult it is to ascertain the amount of damages attributable to the violation, as distinct from other, independent factors; (ii) recognition of indirect claims would force courts to adopt complicated rules to apportion damages among different levels of injury; and (iii) the need to grapple with such problems is simply not justified by the general interest in deterring injurious conduct because directly injured victims can be relied upon to vindicate the law adequately as private attorneys general. *Id.* at 268–69, 112 S.Ct. at 1318. Cases defying ready application of the proximate cause requirement, the Court advised, should be "informed by the concerns" that underlay the rule. *Id.* at 273, 112 S.Ct. at 1320 n. 20.

■ Because the Third Circuit has not specifically addressed RICO's proximate cause requirement since the seminal case of *Holmes* was decided, I look primarily to

*Holmes* and its progeny for guidance here. With *Holmes*'s analysis in mind, I turn to the adequacy of the causal connection that links defendant's fraud on DOE with plaintiffs' injury. Plaintiffs' claim alleges a straightforward three-party fraud scheme in which the principal players are defendant (the perpetrator), DOE (the deceived conduit for the fraud), and plaintiffs themselves (the injured victims). This scheme posits a chain of causation comprised of the following steps. First, defendant fraudulently certified to DOE the eligibility for the GSL program of the schools defendant operated. Second, DOE provided student loan guarantees through the GSL program based on defendant's fraudulent certification. Third, plaintiffs, who were low-income individuals and could not afford tuition payments without substantial financial assistance like that provided by the GSL program, enrolled in defendant's schools based on the availability of GSL funding. In enrolling in defendant's schools, plaintiffs incurred substantial student loan debts to GSL lenders, remitting the proceeds of those loans to defendant's schools as payment for allegedly worthless training and placement services.

Defendant contends that this chain of causation is insufficient to establish proximate cause under RICO as a matter of law. I disagree. First, plaintiffs' theory satisfies the foreseeability mandate that forms the basis of proximate cause law generally and that *Holmes* adopted in the RICO context. Second, plaintiffs' theory is fully consistent with the three policy concerns articulated by the *Holmes* Court in support of that mandate. I develop each of these points separately.

### 1. *Foreseeability*

■ The foreseeability determination, for purposes of RICO's proximate cause inquiry, is guided by the nature of the underlying predicate acts alleged, here mail fraud. *Prudential Ins. Co.*, 828 F.Supp. at 296 (citing *Holmes*, 503 U.S. at 287–88, 112 S.Ct. at 1328 (Scalia, J., concurring)). To hold a defendant liable for mail fraud, a RICO plaintiff "need not be the primary victim, only an intended victim" of the scheme. *Prudential Ins. Co.*, 828 F.Supp. at 296; *Matter of EDC, Inc.*, 930

F.2d 1275, 1279 (7th Cir.1991). Plaintiffs easily satisfy this "intended victim" standard, as they were both essential to fraud's success and the first parties to be injured by it.

As alleged here, defendant's mail fraud scheme cast plaintiffs not in some tangential or remote role, but rather as the star victims. The principal benefit defendant sought to secure under that scheme was the tuition revenue and resulting profit made possible by the guaranteed student loans plaintiffs assumed. Without plaintiffs' participation as borrowers, all of the acts by which defendant allegedly defrauded DOE and manipulated the GSL program, and even DOE's guarantees themselves, would have been, at least financially, for naught. In short, plaintiffs' injury, *i.e.*, their assumption of tuition debt, was the *sine qua non* of the scheme's success. Thus, plaintiffs' claim is, in this critical respect, akin to that upheld by the Third Circuit in *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1169–70 (3d Cir.1989), a case decided before *Holmes* but followed by the Seventh Circuit in the post-*Holmes* decision of *Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344 (7th Cir.1992). In *Shearin*, the Third Circuit addressed the claim of a "whistleblower" fired for threatening to expose her employer's securities fraud conspiracy directed at third-party customers, holding that the plaintiff had alleged a causal connection between the conspiracy and her firing sufficient to establish standing under RICO. *Shearin*, 885 F.2d at 1168–69. The firing was "by reason of" the conspiracy violation there, the court reasoned, because it was "essential" to the conspiracy's secrecy and thus to the conspiracy's perpetuation. *Id.*

That plaintiffs' injury was sufficiently foreseeable to satisfy the proximate cause test is further supported by the students' place as the first victims in the alleged fraud chain. In assuming liability for tuition debts, plaintiffs experienced an immediate, cognizable injury. *See Torres v. CareerCom*, No. 91 Civ. 3487, 1992 WL 245923, at *4 (E.D.Pa. Sept. 18, 1992) (allegations that plaintiffs assumed student loans adequately pleaded RICO injury); *cf. Rosario v. Livaditis*, 963 F.2d 1013, 1021 (7th Cir.1992) (jury could have found that students suffered RICO inju-

ry in incurring tuition debt). DOE, by contrast, could suffer harm in its role as guarantor only later, upon the default of the primary borrowers, plaintiffs. *See* 20 U.S.C. § 1080 (DOE's guarantee triggered only upon student borrower's default). Accordingly, plaintiffs' theory rests securely on Justice Holmes's bedrock proximate cause dictum, "The general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Southern Pac. Co. v. Darnell–Taenzer Lumber Co.,* 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451 (1918) (*quoted in Holmes,* 503 U.S. at 270–71, 112 S.Ct. at 1319). *Compare Holmes,* 503 U.S. at 270–71, 112 S.Ct. at 1319 (proximate cause not established where plaintiff customers were injured "only insofar as the stock manipulation *first injured the broker-dealers* and left them without the wherewithal to pay customers' claims") (emphasis added).

Nor is the causal nexus destroyed here merely because DOE occupied a spatially intermediate position between defendant and plaintiffs in the flow of the alleged fraud, as defendant contends. Three-party or "pass-through" mail fraud chains, in which money or property is extracted from a victim by means of a mailing directed at some other person or entity, are not, by definition, too weak or too labyrinthine to withstand proximate cause scrutiny. Thus, cases since *Holmes* have rejected proximate cause challenges to claims alleging such schemes in a variety of factual contexts. *See Prudential Ins. Co.,* 828 F.Supp. at 297 (asbestos manufacturers' mailings to architects and building contractors understating asbestos risks could have proximately caused injury to purchasers of asbestos-contaminated buildings); *Trautz v. Weisman,* 819 F.Supp. 282, 287 (S.D.N.Y. 1993) (nursing home operators' mailing of false compliance certifications to licensing agencies in order to secure renewal of oper-

ating licenses could have proximately caused injury to nursing home residents); *Phoenix Home Life Mut. Ins. Co. v. Brown,* 857 F.Supp. 7, 10 (W.D.N.Y.1994) (insurance agents' mailing of false materials to competing insurer's policyholders to steal business for agents' employer could have proximately caused injury to competing insurer). *See also Shaw v. Rolex Watch U.S.A., Inc.,* 726 F.Supp. 969, 972–73 (S.D.N.Y.1989) (watch manufacturer's false mailings to U.S. Customs officials to induce seizure of watch importer's inventory could have proximately caused injury to watch importer). Fundamentally, plaintiffs' theory is no different than those sanctioned in these cases. Accordingly, it is sufficient to survive defendant's causation attack.

Indications from the Third Circuit support this conclusion. In *Tabas v. Tabas,* 47 F.3d 1280 (3d Cir.1995) (*en banc*), its most recent RICO pronouncement, the Third Circuit clarified in a footnote that victims of a RICO mail fraud need not demonstrate reliance on the predicate mailings themselves in order to allege a viable claim. *Id.,* at 1297. As is the case here, such reliance on predicate mailings is often absent in schemes that connect perpetrator and victim through an intermediate person or entity. Thus, by freeing RICO plaintiffs from pleading direct reliance on the underlying mailings, *Tabas,* I believe, implicitly allows for RICO liability in the sort of three-party, "pass-through" fraud structure alleged here.[2]

### 2. *Policy Considerations*

The soundness of the result I reach on the doctrinal ground of foreseeability is confirmed when plaintiffs' claim is tested against the three policy concerns articulated in *Holmes,* 503 U.S. at 268–69, 112 S.Ct. at 1318. First, there are no difficulties here in calculating the damages attributable to defendant's alleged mail fraud as distinguished

---

**2.** *Tabas* therefore dispenses with defendant's argument that proximate cause cannot be established here because plaintiffs cannot demonstrate reliance on the predicate mailings. 47 F.3d at 1297. Now, traditional, broad principles of proximate cause form the touchstone of "by reason of" inquiry under § 1964(c). *Accord Prudential Inc. Co.,* 828 F.Supp. at 296; *American Health Sys., Inc. v. Visiting Nurse Ass'n of Greater Philadelphia,* No. 93 Civ. 542, 1994 WL 314313,

at \*6–\*7 (E.D.Pa. June 29, 1994). Also swept away by *Tabas's* rejection of the direct reliance requirement is the approach of some cases requiring "convergence" or identity of the deceived and injured parties under RICO. Indeed, this "convergence" approach was described, even before *Tabas,* as "not on very solid footing." *In re American Express Shareholder Litig.,* 840 F.Supp. 260, 266 (S.D.N.Y.1993), *aff'd,* 39 F.3d 395 (2d Cir.1994).

from those attributable to other factors. As alleged here, the entire injury—that is, the aggregate amount of student loans assumed by plaintiffs—was made possible only by the loan guarantees secured through defendant's alleged fraud on DOE. Second, because the "damages" here correspond to the outstanding student loan balances plus any credited loan payments, complicated apportionment rules to account for multiple levels of injury are unnecessary. The only parties among whom damages would be apportioned are the plaintiff borrowers and DOE, in its capacity as ultimate guarantor. Plaintiffs' recovery, then, should reflect simply their previous payments and the outstanding loan balances for which they are currently liable. Third, plaintiffs, not DOE, are the parties initially and "directly" injured by their assumption of fraudulently induced debt, and they, not DOE, would be the initial parties to undertake the role of private attorneys general to deter RICO violations such as those alleged here. Plaintiffs are the borrowers under the GSL arrangement and the primary obligors on the notes that represent their debts to

participating lenders. DOE, by contrast, acts merely as the ultimate guarantor of the GSL program and is liable to make good on its guarantee here only upon the plaintiffs' default. *See* 20 U.S.C. § 1080.

\* \* \* \* \* \*

In sum, plaintiffs' theory falls well within the bounds of the proximate cause standard evolving under RICO. This result is supported by both the doctrine and policy of proximate cause law. My conclusion, moreover, is faithful to the Third Circuit's admonition that "RICO is to be read broadly" to effectuate that Act's remedial purposes. *Tabas*, 47 F.3d at 1296 (further observing that "the Supreme Court has consistently struck down efforts by the courts of appeals to narrow RICO's scope") (internal quotations and citations omitted). Constrained "by the language of the statute and the Supreme Court's interpretation of it," *id.*, I cannot conclude that plaintiffs' injury was not "by reason of" defendant's fraud under *Holmes* and its progeny. Accordingly, I reject defendant's proximate cause basis for summary judgment.[3]

---

3. Defendant relies in part on decisions from the Ninth Circuit, which has applied the proximate cause requirement in an arguably restrictive manner. The Third Circuit's RICO decisions in a variety of contexts, however, indicate a generally more permissive approach to that statute. *E.g., Tabas*, 47 F.3d at 1294–97 (applying RICO to "garden variety" fraud scenario in which business insiders diverted assets at expense of outside stakeholders as part of "regular way" of doing "legitimate business"); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258 (3d Cir. 1995) (RICO's person/enterprise distinction can be satisfied by pleading corporate officer as "person" and corporation as "enterprise"); *Shearin*, 885 F.2d at 1168–70 (holding non-predicate acts in furtherance of conspiracy actionable under § 1962(d)).

In any event, the Ninth Circuit cases defendant cites are distinguishable from that before me. In those decisions, the alleged scheme had succeeded in financially injuring the immediately deceived party before the plaintiff ever entered the scenario. *See Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928–29 (9th Cir.1994) (building owners' fraud resulting ultimately in sub-tenant's payment of inflated amounts to master tenant under sublease initially injured master tenant, who was directly liable for rent increases and who passed increases along to sub-tenant under sublease between master tenant and sub-tenant); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1312 (9th Cir.1992) (loss of revenue

claimed by subcontractors arising from fraudulent procurement of government contracts by competitor-affiliated prime contractors ran directly to plaintiff-affiliated prime contractors, who suffered complete injury first), *cert. denied*, —— U.S. ——, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993). Such cases are thus an unremarkable application of Justice Holmes's "stopping at the first injury" principle. *See Southern Pac. Co.*, 245 U.S. at 532, 38 S.Ct. at 186. The scheme alleged here, by contrast, claimed plaintiffs as its first victims.

Finally, defendant's "intervening harm" authorities are equally inapposite here. Those cases involved either the intervening force of some large-scale superseding event or the independent, unpredictable actions of some third party. *See, e.g., First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir.1994) (widespread downturn in real estate market broke causal link between real estate lender's loss and borrower's alleged fraud in loan transaction), *cert. denied*, —— U.S. ——, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995); *Barr Labs., Inc. v. Quantum Pharmics, Inc.*, 827 F.Supp. 111, 115–16 (E.D.N.Y.1993) ("intervening actions" of pharmaceutical customers destroyed causal link between drug manufacturer's fraud on Food and Drug Administration in approval application process and competitor's loss of sales on competing drugs). No such "intervening" factors complicate this case.

### B. *Remaining Bases for Summary Judgment*

Defendant also asserts a variety of additional bases for summary judgment here, none of which warrants discussion. I list them for completeness' sake only. First, defendant advances several other reasons why causation cannot be established here, contending that: (i) defendant made no misrepresentations to DOE; (ii) DOE did not rely on the alleged misrepresentations; (iii) the schools' eligibility for funding was not a substantial factor in plaintiffs' enrollment; and (iv) with respect to those plaintiffs who enrolled in the Watterson School of Business and Technology and could not complete the course there due to that school's closure, there is no allegation or proof that defendant's alleged fraud was in any way responsible for the Watterson School's demise. Second, defendant asserts that plaintiffs cannot prove the requisite "person"/"enterprise" distinctiveness required under RICO because plaintiffs' alignment of RICO "person" and "enterprise" here is undermined by the fundamentally incompatible alignment plaintiffs alleged in a related case before Judge Waldman, *Torres v. CareerCom,* No. 91 Civ. 3487. Third, defendant argues that plaintiffs' RICO claim is in fact an impermissible private action under the Higher Education Act, 20 U.S.C. §§ 1070–1099. Fourth, defendant claims that plaintiffs' suit is precluded by a settlement agreement approved in this litigation dismissing plaintiffs' claims against DOE. Finally, defendant contends that plaintiffs' assumption of student loan debt does not constitute an actionable injury under RICO.

I have considered each of these arguments carefully. Finding that the record discloses fact issues with respect to defendant's causation arguments and that the remaining arguments are without legal merit, I reject these contentions summarily.

### III. CONCLUSION

I cannot conclude that plaintiffs' RICO theory fails to establish proximate cause as a matter of law simply because it posits a chain of causation beginning with defendant's fraud on DOE and ending with plaintiffs' assumption of student loans to pay for worthless education. A trier of fact could find that the causal nexus between defendant's mail fraud and plaintiffs' enrollment and indebtedness is "proximate," and it should be allowed to consider that question. I thus reject defendant's proximate cause challenge. Defendant's remaining arguments for summary judgment here are also unavailing, as they either implicate disputed factual issues or are without legal merit. Accordingly, I will deny defendant's motion for summary judgment. An appropriate order follows.

### ORDER

AND NOW, this 13th day of March, 1995, IT IS HEREBY ORDERED that, for the reasons stated in the accompanying Memorandum, defendant's "Motion to Dismiss and for Summary Judgment" and defendant's "Motion to Dismiss Claims Based on School Closing or for Partial Summary Judgment" are DENIED.