Messody J. PERLBERGER, etc.

v.

Norman PERLBERGER, et al.

No. Civ.A. 97–4105.

United States District Court,
E.D. Pennsylvania.

Nov. 23, 1998.

Mary Huwaldt, Caplan & Luber, Paoli, PA, Joseph F. Rizzo, Rizzo & Associates, Darby, PA, for Messody T. Perlberger, Karen D. Perlberger.

Messody T. Perlberger, Elkins Park, PA, pro se.

Karen D. Perlberger, Elkins park, PA, pro se.

Norman Perlberger, Norristown, PA, pro se.

Kean K. Mc Donald, Mindee J. Reuben, Kelly Himes Brolly, Fox, Rothschild, O'Brien & Frankel, LLP, Philadelphia, PA, Norman Perlberger, Perlberger Law Associates, P.C., Norristown, PA, for G. Daniel Jones, Jones, Hayword and Lenzi, P.C.

William R. Solvibile, Philadelphia, PA, Jeffrey C. Schwartz, Allen L. Rothenberg, Philadelphia, PA, Michael P. O'Connor, Murphy and O'Connor, Philadelphia, PA, Norman Perlberger, Perlberger Law Associates, P.C., Norristown, PA, for Allen L. Rothenberg.

Norman Perlberger, Perlberger Law Associates, P.C., Norristown, PA, for Perlberger Law Associates, P.C., Amy S. Lundy Brennen.

Francis J. Deasey, Deasey, Mahoney & Bender, Ltd., Philadelphia, PA, for U.S. Fire Ins. Co., movant.

## MEMORANDUM

PADOVA, District Judge.

Plaintiff Messody J. Perlberger, individually and on behalf of her minor daughter Laura E. Perlberger, and Plaintiff Karen D. Perlberger ("Plaintiffs") have alleged that Defendants participated in a fraudulent scheme to conceal the true value of the income of Defendant Norman Perlberger ("Perlberger") during Messody and Norman Perlberger's divorce proceedings. Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961–68 (West 1984 & Supp. 1997), by use of mail and wire fraud, in violation of 18 U.S.C.A. §§ 1341 and 1343 (West 1984 & Supp.1997). Plaintiffs also bring claims based in state law against the Defendants for fraud and intentional infliction of emotional distress.[1]

Before the Court is a Motion for Summary Judgment filed by Defendants G. Daniel Jones ("Jones") and Jones, Hayward & Lenzi, P.C. (hereinafter collectively referred to as the "Accountant Defendants").[2] For the reasons that follow, the Court will grant the Accountant Defendants' Motion for Summary Judgment.

## I. PREFATORY STATEMENT

It is incumbent upon the Court to examine carefully all of the submissions and to determine whether there are genuine issues of material fact that would warrant this case going forward. The Federal Rules of Civil Procedure require that the Court evaluate summary judgment motions on the basis of the Rule 56 submissions presented with such motions, responses, and replies.

In opposing Defendants' Motions for Summary Judgment, Plaintiffs have requested

---

1. By Order filed on September 18, 1997, the Court dismissed Count II (Civil Conspiracy, 18 U.S.C.A. §§ 1985 and 1986), Count IV (Violation of the Federal Family Support Act of 1988, 42 U.S.C.A. § 601), and Count V (Violation of the First and Fourteenth Amendments).

2. The Accountant Defendants have also filed a Motion for Sanctions. In addition, Defendants Perlberger and Perlberger Law Associates ("PLA") have filed a Motion for Summary Judgment. The Court will consider those Motions separately.

that the Court grant a stay until new counsel is obtained and additional bank documents are reviewed. Although the Court is not unsympathetic to Plaintiffs' situation, the Court must balance Plaintiffs' numerous requests for extensions of time against Defendants' interest in a prompt resolution of the serious claims of misconduct made against them. Moreover, the Court has an obligation to protect the orderly administration of justice, and sees no basis, in light of the torturous procedural history of this case, to entertain a stay request regarding the resolution of these summary judgment motions.

With these principles in mind, the Court has concluded that Defendants' Motions for Summary Judgment are now ripe for disposition. Although Plaintiffs are now *pro se,* they have been represented by two different attorneys during the course of this case.[3] While represented by counsel, Plaintiffs conducted extensive discovery in this case, including written discovery (*e.g.,* interrogatories and document demands) and oral depositions. In addition, the parties have had available to them all of the material from the underlying domestic relations litigation in the state system.[4] The discovery deadline in this case has been extended several times at the request of Plaintiffs. Both of Plaintiffs' previous attorneys reviewed the documents requested by them and such documents have been made available to Plaintiffs. At a hearing before the Court on September 25, 1998, Plaintiffs' counsel reported to the Court that all discovery had been completed. At that same hearing,

**3.** The Court notes that Plaintiffs did not oppose the withdrawals of either attorney.

**4.** According to Plaintiffs, they also have had access to discovery conducted in *Diane Strausser v. Norman Perlberger, et al.,* Case No. 92–18833, Ct. of Common Pleas of Montgomery Co. (Pls.' Mot. for Extraordinary Relief at 5 (Doc. No. 191).)

**5.** In the end, the Court granted Plaintiffs three extensions of time to respond to the summary judgment motions.

**6.** Despite Messody Perlberger's representation to the Court, Plaintiffs now claim that they need records from Jefferson Bank. As set forth in the Court's Order of this same date on Plaintiffs' Motion for Injunctive Relief, a subpoena to Jefferson Bank was issued on September 7, 1998,

Messody Perlberger stated that she was prepared to pursue the case without counsel, only needed a short accommodation of additional time to respond to the outstanding summary judgment motions,[5] and had the documents necessary to pursue the case.[6] In addition, she rejected the Court's suggestion that counsel file responses to the summary judgment motions before the Court granted counsel's motion to withdraw. Under these circumstances, the Court finds that further delay in deciding the summary judgment motions is not warranted.

## II. *FACTUAL BACKGROUND*[7]

Plaintiffs' case is based on an alleged fraudulent scheme devised and perpetrated by Defendants whereby Perlberger was able to hide his assets and income from Plaintiffs and from the Court of Common Pleas of Montgomery County, which had jurisdiction over the Perlbergers' divorce proceedings. Plaintiffs have alleged that, *inter alia,* the Accountant Defendants were participants in the fraudulent scheme. Plaintiffs further allege that the fraudulent scheme is not complete, has continued to the present, and will continue into the future as long as Perlberger is subject to an obligation to support Plaintiff Messody Perlberger and her children. (Amended Count III—RICO claim ("Am. Count III") at ¶ 14.)

## III. *LEGAL STANDARD*

Summary judgment is appropriate "if the pleadings, depositions, answers to interroga-

three days before the extended September 10, 1998 discovery deadline, with a return date of September 14, 1998, seven days after the extended discovery deadline. Plaintiffs' former counsel issued the subpoena, and he and Messody Perlberger were aware of its existence on September 25, 1998 when counsel represented to the Court that discovery had been completed and Messody Perlberger represented that she had the documents she needed to pursue the case.

**7.** The procedural and factual background in this case is set forth in detail in *Perlberger v. Perlberger,* Civ.A. No. 97–4105, 1997 WL 597955 (E.D.Pa. Sept.16, 1997), *Perlberger v. Perlberger,* Civ.A. No. 97–4105, 1998 WL 76310 (E.D.Pa. Feb.24, 1998), and *Perlberger v. Perlberger,* Civ.A. No. 97–4105, 1998 WL 472657 (E.D.Pa. Aug.13, 1998).

tories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case. *Id.*

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. After the moving party has met its initial burden, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). That is, summary judgment is appropriate if the nonmoving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552. Under Rule 56, the Court must view the evidence presented in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

## IV. DISCUSSION

### A. Plaintiff's RICO Claim

The elements of a civil RICO claim are: (1) a violation of 18 U.S.C. § 1962; (2)

an injury to the plaintiff's business or property; and (3) the proximate causation of the injury by the RICO violation. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 265–68, 112 S.Ct. 1311, 1316–17, 117 L.Ed.2d 532 (1992). To establish a violation of Section 1962, Plaintiffs must prove each of the following elements: "(1) the conduct (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." [8] *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). A "pattern of racketeering activity" requires the occurrence of at least two acts of racketeering activity (*i.e.*, predicate acts) within a ten year period. 18 U.S.C.A. § 1961(5)(West 1984); *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. Plaintiff has alleged predicate acts by the Accountant Defendants based on mail and wire fraud in violation of 18 U.S.C.A. §§ 1341 (mail fraud) and 1343 (wire fraud).

### 1. Predicate Acts

Plaintiffs allege that the Accountant Defendants engaged in the following predicate acts:

(1) the Accountant Defendants "were involved in the negotiations for and the purchase of the Lionville [Villanova and Avalon] propert[ies], earned substantial fees for their involvement, were aware of and conspired with Perlberger to achieve his goal of using [Diane] Strausser to minimize the apparent amount of his own assets and income, were aware that the purchase of the property was designed to further Perlberger's rather than Strausser's best interests, and never advised Strausser against purchasing the propert[ies] or of her unwitting facilitation of Perlberger's scheme to defraud Messody Perlberger and the divorce court;" (Am. Count III at ¶¶ 35, 39, 68.)

(2) "Perlberger had Jones and JHL [Jones, Hayward & Lenzi] prepare a fraudu-

---

**8.** Plaintiffs allege violations of Section 1962(a) (investing income derived from a pattern of racketeering in the enterprise), Section 1962(b) (acquiring or maintaining an interest in an enterprise through a pattern of racketeering), Section 1962(c) (conducting the affairs of an enterprise through a pattern of racketeering), and Section 1962(d) (conspiring to violate subsections (a), (b), or (c)). The four elements set forth in *Sedima* are common to all four subsections of 18 U.S.C. § 1962(a)–(d).

lent 'joint financial statement' for use in his divorce proceedings, which inaccurately and improperly reflected substantial assets owned by Strausser, but minimized and misrepresented the extent of Perlberger's own assets and hid the value of PLA, which was actually paying a substantial portion of his personal living expenses through Strausser;" (*Id.* at ¶ 60.)

(3) "[S]ubstantial income and assets of Perlberger and PLA were transferred to [Amy Lundy] Brennen with the knowledge, cooperation, assistance and participation of Jones and JHL, so that Brennen could pay for Perlberger's personal expenses and affluent lifestyle, while making his income appear lower than it actually was, for the purpose of defrauding Messody Perlberger and the divorce court;" (*Id.* at ¶ 83.)

(4) The Accountant Defendants "were involved in the negotiations for and the consummation of Strausser's financing of Perlberger's firm, as well as her appearance on the firm's payroll, including the preparation of the relevant financial statements; they earned substantial fees for their involvement, were aware of and conspired with Perlberger to achieve his goal of using Strausser to minimize the apparent amount of his own assets and income, were aware that the financing and the payroll were designed to further Perlberger's rather than Strausser's best interests, and never advised Strausser of her unwitting facilitation of Perlberger's scheme to defraud Messody Perlberger and the divorce court." (*Id.* at ¶ 65.)

With respect to the alleged predicate acts of the Accountant Defendants, the undisputed evidence before the Court establishes the following:

With respect to Plaintiffs' allegations concerning the Lionville, Villanova, and Avalon properties, the Accountant Defendants were not involved in the negotiations for or the purchase of these properties. These properties were purchased in November 1987, June 1988, and March 1989, respectively. (Exs. in Supp. of Accountant Defendants' Summ. J. Mot. ("Defts.' Exs.") Exs. J, K, L, Mortgages and Contract for Sale.) The Accountant Defendants never consulted with Strausser and Perlberger regarding the purchase of these properties. (Defts.' Exs. Ex. F, Jones Aff. at ¶ 14.) In fact, these properties were purchased before the Accountant Defendants began providing accounting and tax services to Perlberger and Strausser. (*Id.* at ¶ 15.)

In this regard, Jones first met with Strausser on April 15, 1989. (*Id.* at ¶ 7.) The Accountant Defendants did not do any work for Strausser prior to April 15, 1989. (*Id.* at ¶ 8.)

Perlberger first contacted Jones on April 15, 1989 for tax advice concerning his personal income tax returns. (Defts.' Exs. Ex. A, Jones Dep. at 7, Jones Aff. at ¶ 2.) Although Perlberger and Jones first met in 1987, Jones and his firm did not do any accounting work for Perlberger or his firm until 1989. The Accountant Defendants began doing work for Perlberger and his law firm in June of 1989. (Jones Dep. at 7; Jones Aff. at ¶¶ 3–4.) The Accountant Defendants did not do any work for Perlberger, Perlberger & Haft, or PLA prior to April, 1989.[9] (Jones Aff. at ¶ 6.)

Plaintiffs attempt to raise an issue of disputed fact concerning the date that the Accountant Defendants first did work for Perlberger. In this regard, Plaintiffs refer to Perlberger's 1988 personal federal income tax return. (Pls.' Opp.; Exs. in Supp. of Pls.' Opp. ("Pls.' Exs."), 1988 Perlberger Tax Return, § C.)[10] The Accountant Defendants ad-

---

**9.** Perlberger and Jones first met in 1987. (Jones Dep. at 7; Defts. Exs. Ex. E, Perlberger Dep. at 166.) Jones was an expert in a case in which the client had fired her counsel and had retained Perlberger as substitute counsel. (Perlberger Dep. at 165.) Because Jones had already completed investigative accounting work on the case, he continued providing expert services in the case after Perlberger had been substituted as counsel. (*Id.* at 165–66.)

**10.** Plaintiffs have filed an omnibus brief in opposition to the various Motions for Summary Judgment filed by Defendants. This brief is voluminous and not paginated. For this reason, the Court is unable to cite to specific pages in the brief. Some of the evidence submitted by Plaintiffs in support of their Opposition to Defendants' Motions for Summary Judgment is interspersed throughout the brief. In addition, Plaintiffs have separately submitted exhibits in support of their Opposition to Defendants' Motions for Summary

mit that they prepared Perlberger's 1988 federal and state tax returns. (Defts.' Reply at 4.) But they also submit evidence that demonstrates that their work on the return did not begin until September 26, 1989. (Exs. in Supp. of Defts.' Reply ("Defts.' Reply Exs."), Ex. 1, Internal Process Sheets for Perlberger 1988 Federal and State Income Tax Returns.) Plaintiffs also submit an affidavit dated October 14, 1998 from Messody Perlberger, in which she testifies that in the summer of 1987, she was looking for an accountant to assist her in her divorce and she contacted Jones, who told her that he could not assist her because he was working with Norman Perlberger. (Pls.' Opp., Messody Perlberger Aff.) Although Jones denies that this conversation ever took place, Messody Perlberger's testimony does not provide the basis for an inference that Jones and his firm began providing tax and accounting services to Perlberger and his entities before April of 1989 for the simple reason that Jones was working with Perlberger as an expert on a case in the summer of 1987, which would have prevented him from assisting Messody Perlberger in her divorce proceedings. (Jones Dep. at 82–83.) Therefore, Plaintiffs' attempt to create a disputed issue of fact on this point is unavailing.

Therefore, the undisputed evidence before the Court establishes that the negotiations for and the purchase of the Lionville, Villanova, and Avalon properties were completed before the Accountant Defendants began doing tax and accounting work for Perlberger and Strausser and that, consequently, the Accountant Defendants had no involvement in the negotiations for or the purchase of the Lionville, Villanova, or Avalon properties.[11]

With respect to Plaintiffs' allegations concerning the joint financial statement for Perlberger and Strausser used in the Perlbergers' divorce proceedings, the Accountant Defendants did not prepare or participate in the preparation of this statement.[12] (Defts.' Exs. Ex. H, Personal Financial Statement for Perlberger and Strausser; Jones Aff. at ¶ 12; Defts.' Exs. Ex. E, Perlberger Dep. at 183–84.)

With respect to Plaintiffs' allegations concerning the alleged transfer of assets and income from Perlberger and PLA to Brennen, the Accountant Defendants had no involvement in any such transactions. See Court's Memorandum and Order dated November 4, 1998. The Accountant Defendants never were the accountants for Brennen. (Jones Dep. at 82; Defts.' Exs. Ex. R, Brennen Dep. at 37–38; Jones Aff. at ¶ 19.) Moreover, the Accountant Defendants never gave any advice regarding compensation paid by PLA to Brennen or the alleged transfer of assets from PLA to Brennen.[13] (Jones Aff. at ¶ 20.)

With respect to Plaintiffs' allegations concerning the financing for Perlberger's law firm, the Accountant Defendants were not involved in structuring or securing this financing. Perlberger established Perlberger & Haft ("P & H") in June 1988 after leaving the law firm of Blank Rome Comisky & McCauley ("Blank Rome"). (Defts.' Exs. Ex. M, P & H Articles of Incorporation.) On July 28, 1988, Constitution Bank provided $300,000 in financing for P & H, which was secured by a second mortgage on the Villanova property, as evidenced by a Consent to Pledge the mortgage on the property signed by Perlberger and Strausser. (Defts.' Exs. Ex. M, P & H Loan Documents.) As discussed above, Jones first met with Perlberger and Strausser in April of 1989 concerning the preparation of the personal income tax

Judgment. Although the exhibits are organized into different sections, individual exhibits are not numbered. Therefore, when referring to Plaintiffs' exhibits, the Court will describe the nature of the exhibit and cite to the section in which the exhibit is located.

11. Plaintiffs have not submitted any evidence to support their contention that the Accountant Defendants were involved in the negotiations for or the purchase of the Lionville, Villanova, or Avalon properties.

12. Plaintiffs have not submitted any evidence to support their contention that the Accountant Defendants prepared or participated in the preparation of the joint financial statement.

13. Plaintiffs have not submitted any evidence in support of their contention that the Accountant Defendants participated in or had knowledge of the alleged transfer of assets and income from Perlberger and PLA to Brennen.

returns and did not begin to do work for Perlberger or his law firm until June of 1989. Therefore, the financing for Perlberger's new law firm was already in place well before the Accountant Defendants began providing tax and accounting services to Perlberger and Strausser. (Jones Aff. at ¶ 16.) Consequently, the undisputed evidence before the Court establishes that the Accountant Defendants were not involved in structuring or securing the financing for Perlberger's law firm.[14]

Finally, with respect to Plaintiffs' allegations concerning payments to Strausser, the Accountant Defendants were not involved in Strausser's appearance on the payroll of P & H or the structuring of payments to Strausser from P & H and PLA. Strausser was first employed by P & H in 1988. (Defts.' Exs. Ex. 0, Strausser 1988 Income Tax Returns; Defts.' Exs. Ex. E., Perlberger Dep. at 27.) As set forth above, the Accountant Defendants first met with Strausser in April 1989. Therefore, the undisputed evidence establishes that the Accountant Defendants could not have had and did not have any involvement in the establishment of Strausser's employment relationship with P & H.[15] (Jones Aff. at ¶ 17.)

In conclusion, Plaintiffs have not submitted any evidence to support their contention that the Accountant Defendants committed the alleged predicate acts. To establish their RICO claim, Plaintiffs must prove the existence of a pattern of racketeering activity. *Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285. A pattern of racketeering activity requires the occurrence of at least two predicate acts

within a ten year period.[16] *Schroeder v. Acceleration Life Ins. Co. of Pennsylvania*, 972 F.2d 41, 46 (3d Cir.1992). "[N]o defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern." *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990); *see also Wright v. Sheppard*, 919 F.2d 665, 673 (11th Cir.1990). Because Plaintiffs have failed to make a factual showing on an essential element of their RICO claim, their RICO claim against the Accountant Defendants fails as a matter of law.[17]

### 2. *Section 1962(c)*

Because the Court has concluded that Plaintiffs have failed to demonstrate that genuine issues of material fact exist on an essential element of their RICO claim against the Accountant Defendants, the Court does not need to reach the other arguments raised by the parties in support of and in opposition to the Accountant Defendants' Motion for Summary Judgment. Plaintiffs, however, have submitted a welter of evidence to support their belief that the Accountant Defendants were an integral part of the alleged scheme to defraud them. None of this evidence supports a reasonable inference that the Accountant Defendants committed the alleged predicate acts outlined by Plaintiffs in their pleadings. In large part, the evidence submitted by Plaintiffs merely substantiates the existence of a professional relationship between the Accountant Defendants, on the one hand, and Strausser, Perlberger, and the various Perlberger entities,

---

14. Plaintiffs have not submitted any evidence in support of their contention that the Accountant Defendants were involved in structuring or securing the financing for Perlberger's law firm.

15. Plaintiffs have not submitted any evidence in support of their contention that the Accountant Defendants were involved in the appearance of Strausser on the payroll of P & H or in the structuring of payments to Strausser from P & H and PLA.

16. Plaintiffs' burden of proof as to underlying predicate acts is a preponderance of the evidence. *United States v. Local 560 of Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 780 F.2d 267, 279 n. 12 (3d Cir.1985).

17. As set forth above, Plaintiffs have alleged that the Accountant Defendants violated subsections (a), (b), (c), and (d) of Section 1962. The existence of a pattern of racketeering activity, established by proof of the commission of at least two predicate acts, is an essential element of every civil RICO claim, whether based on subsection (a), (b), (c), or (d) of Section 1962. Because Plaintiffs have failed to show the existence of a genuine issue of material fact as to whether the Accountant Defendants committed any of the alleged predicate acts, Plaintiffs' RICO claim, under subsections (a), (b), (c), and (d) of Section 1962, fails as a matter of law.

on the other hand. This relationship consisted of accounting and tax services provided by the Accountant Defendants to Strausser, Perlberger, and the Perlberger entities. In addition, Jones served as an expert witness for Perlberger during the Perlbergers' divorce proceedings. At most, some of the evidence arguably supports the inference that the Accountant Defendants' performance fell below the standard of care for accounting professionals. As discussed below, even if the Accountant Defendants' performance was deficient, such evidence cannot support a RICO claim against the Accountant Defendants. As such, the evidence relied on by Plaintiffs is either legally insufficient to maintain a Section 1962(c) claim against the Accountant Defendants or immaterial under a Rule 56 analysis. Nevertheless, because Plaintiffs, who are currently proceeding *pro se*, have based their Opposition on this evidence, the Court will take this opportunity to address this evidence.

In their Opposition to the Accountant Defendants' Motion for Summary Judgment, Plaintiffs argue that the Accountant Defendants were intimately familiar with the finances of Perlberger, P & H, PLA, Norman Perlberger, Esquire, P.C., and Strausser because the Accountant Defendants served as the accountants for these individuals and entities and because Jones served as Perlberger's accounting expert in the Perlbergers' divorce proceedings. Plaintiffs further argue that the Accountant Defendants were directly involved in the routine operations of PLA.[18] Plaintiffs then leap to the conclusion that the Accountant Defendants were knowing participants in the alleged fraudulent scheme to conceal the true value of Perlberger's income during the Perlbergers' divorce proceedings. This scheme included the alleged funneling of asbestos case management fees from Allen Rothenberg to Perlberger utilizing a secret entity called Norman Perlberger, Esquire, P.C. in order to hide this income from Plaintiffs and the divorce court. (Pls.' Opp.)

Although Plaintiffs do not link the evidence that they rely on to the particular subsection of Section 1962 that the Accountant Defendants allegedly violated, Plaintiffs apparently use this evidence to support their Section 1962(c) claim against the Accountant Defendants. Section 1962(c) provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C.A. § 1962(c). The Supreme Court in *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S.Ct. 1163, 1170, 122 L.Ed.2d 525 (1993) held that "to conduct or participate" in the affairs of a RICO enterprise, within the meaning of Section 1962(c), one must have some part in directing the affairs of the enterprise. To satisfy the element of direction necessary to be liable under Section 1962(c), Plaintiffs must meet the so-called "operation and management test." Under this test, "one must participate in the operation or management of the enterprise itself." *Id.* at 185, 113 S.Ct. at 1173. "[N]ot even action involving some degree of decisionmaking constitutes participation in the affairs of an enterprise." *University of Maryland at Baltimore v. Peat, Marwick, Main & Company*, 996 F.2d 1534, 1538–39 (3d Cir.1993).

As an initial matter, the Accountant Defendants admittedly provided accounting and tax services to Perlberger, P & H, PLA, Norman Perlberger, Esquire, P.C., and Strausser. In this regard, the Accountant Defendants assisted Strausser with the amendment of her 1987 personal income tax return, the modification of her 1988 personal income tax return, and the preparation of her 1989 and 1990 personal income tax returns.[19] (Jones Aff. at ¶¶ 9–10.) For this reason, the Accountant Defendants do not dispute Strausser's testimony that

18. Plaintiff Messody Perlberger also made these assertions in her verified Answer to Accountant Defendants' First Set of Interrogatories. (Defts.' Exs. Ex. Y.)

19. In April 1991, the Accountant Defendants stopped preparing her tax returns. (Jones Aff. at ¶ 11.)

Daniel Jones, C.P.A. was aware of the salaries paind [sic] to me by Perlberger & Haft and Perlberger Law Associates, Norman Perlberger, Esquire, P.C. and the Law Offices of Allen Rothenberg, as he performed accounting services and prepared tax returns for each of the Perlberger entities covering the period in which I was employed by them, and prepared my tax returns as well.

(Pls.' Opp., Strausser Aff. at ¶ 3.)

The Accountant Defendants also scheduled the income of Professional Link and Aesthetic Leasing, two fictitious business names assigned to Strausser.[20] (Jones Dep. at 82.) The Accountant Defendants, however, had no involvement in the formation of these entities. (Jones Aff. at ¶ 18.) According to Strausser, "Perlberger was solely responsible for the creation of the entities, Professional Link and Aesthetic Leasing." (Pls.' Opp., Strausser Aff. at ¶ 5.)

The Accountant Defendants admittedly served as the accountant for Perlberger, P & H, and PLA. (Jones Aff. at ¶ 4.) In this capacity, they prepared personal income tax returns for Perlberger, provided expert witness services for Perlberger in the Perlbergers' divorce proceedings, prepared tax returns for P & H and PLA, and prepared compilation financial statements for P & H [21] and a review financial statement for PLA.

20. According to Plaintiffs, "PLA paid extravagant fees to Professional Link and Aesthetic Leasing, two fictitious business names assigned to Strausser. PLA paid these fictitious entities substantial sums for 'leasing' certain artwork and furniture (e.g., desk and computer table) that Strausser used in the firm." (Pls.' Am. Count III at ¶ 54.)

21. In preparing the compilation financial statements for P & H, the Accountant Defendants relied on the financial documentation provided by the management of P & H. (Ex. D, January 5, 1990 Engagement Letter.) In preparing the review financial statement for PLA, the Accountant Defendants reviewed the statement of assets, liabilities and deficit and related statements of revenues and expenses. (Ex. D, January 18, 1991 Engagement letter.)

22. In connection with Defendant Allen Rothenberg's Motion for Summary Judgment, Rothenberg submitted a summary of fees paid, along with copies of checks issued, by Rothenberg to Perlberger pursuant to the December 21, 1989

(Jones Dep. at 87–88; Defts' Exs. Ex. D, Engagement Letters.)

In addition, the Accountant Defendants provided accounting services for Norman Perlberger, Esquire, P.C. (Perlberger Dep. at 27; Strausser Aff. at ¶ 3.) Their work for this entity began on September 1, 1990. (Defts.' Reply Exs. Ex. 10, New Engagement Data Sheet.) Plaintiffs contend that Norman Perlberger, Esquire, P.C. was a secret corporation, which was created by Perlberger for the purpose of concealing Perlberger's interest in Allen Rothenberg's asbestos cases until the Perlbergers' divorce action was fully resolved. (Pls.' Opp.) The Accountant Defendants, however, had nothing to do with the establishment of this entity; Jones first found out about its existence after it had already been established. (Jones Dep. at 83.) Moreover, there is no evidence to support Plaintiffs' contention that the Accountant Defendants assisted Perlberger in concealing the existence of this entity and the management fees paid by Allen Rothenberg to Perlberger that Perlberger allegedly funneled through this entity. To the contrary, Jones includes an entry for $28,700 of "Management Fees" from this new corporation on the Schedule of Net Disposable Income for Perlberger for the year of 1990 as part of the Income and Expense Statement of Norman Perlberger, which was prepared by Jones as part of his expert testimony in the Perlbergers' divorce proceedings.[22] (Defts.' Reply

agreement between Rothenberg and Perlberger, in which Rothenberg agreed to pay Perlberger 18% of the fees generated on Rothenberg's asbestos personal injury cases that were managed by Perlberger. (Exs. in Supp. of Rothenberg Summ.J.Mot.Ex. H.) Based on these exhibits, it appears that Rothenberg paid Perlberger a total of $53,188.23 in management fees in 1990. The schedule of net disposable income for Perlberger that the Accountant Defendants prepared, however, only lists $28,700 in management fees for 1990. The parties have not addressed the discrepancy in these numbers. To the extent that an inference of concealment of Perlberger's income can be based on this discrepancy, there is no evidence in the Rule 56 submissions that Jones did any more than simply report the figures that were provided to him by Perlberger. Moreover, there is no evidence in the Rule 56 submissions that Jones knew that Perlberger had received more than $28,700 in management fees in 1990 from Rothenberg and knowingly participated in the concealment of this income from Plaintiffs and the divorce court. *United States v.*

Exs. Ex. 2, Income and Expense Statement of Norman Perlberger.)

The Accountant Defendants provided a variety of accounting services to Strausser, Perlberger, and the Perlberger entities.[23] As a result, they were aware of the salaries paid to Strausser and the financial status of Perlberger and the Perlberger entities. In addition, Jones provided expert witness services to Perlberger and consequently was aware of these same matters. (*See* Defts.' Reply Exs. Ex. 2, R–124 and R–113.) Plaintiffs, however, must adduce evidence that the Accountant Defendants participated in the operation and control of the alleged RICO enterprise.[24]

In an attempt to demonstrate that the Accountant Defendants had a part in directing the affairs of the alleged RICO enterprise, Plaintiffs submit a July 20, 1990 memorandum to Bob Olivio of Jones, Hayward & Lenzi from Jones concerning the distribution to PLA employees by the financial administrator of PLA of a form listing other PLA employee's salaries. (Pls.' Exs., § I) Plaintiffs argue that this document shows the Accountant Defendants' involvement in the affairs of Perlberger and PLA because the Accountant Defendants took over the preparation of the PLA payroll. (Pls.' Opp.) The Accountant Defendants have submitted evidence that ADP prepared the payroll for PLA in 1990. (Defts.' Exs. Ex. 11.) To the extent that the July 20, 1990 can be read as evidence that the Accountant Defendants were involved in the preparation of the PLA payroll, this issue is disputed, but is immaterial. Even if the Court accepted as true that

the Accountant Defendants did prepare the PLA payroll in 1990, there is no evidence that they exercised any decisionmaking authority in this regard (*e.g.,* the amount paid by PLA to Strausser). Moreover, even if the Accountant Defendants took over some of the responsibilities previously held by PLA's financial administrator, the Court finds that this degree of participation in the affairs of PLA did not, as a matter of law, rise to the level of directing an enterprise. *University of Maryland at Baltimore v. Peat, Marwick, Main & Company,* 996 F.2d at 1539 (even action involving some degree of decisionmaking does not constitute participation in the affairs of an enterprise).

Plaintiffs also submit an expert report, dated August 26, 1998 and authored by Scott A. McPherson, C.P.A. (Pls.' Exs., § C; Defts.' Exs, Ex HH.) In that report, McPherson opines, based on the documents provided to him, that the actions of the Accountant Defendants "were outside of the professional standard of care." (*Id.*) Even accepting this opinion as true, the deficient performance of the Accountant Defendants will not expose them to liability under the RICO statute. "It cannot be said that by merely performing what are generic financial and related services to an insurance company, even if they are later found to be deficient, an accounting firm has opened itself to liability under the federal racketeering statute."[25] *University of Maryland at Baltimore v. Peat, Marwick, Main & Company,* 996 F.2d at 1539–40.

---

*Console,* 13 F.3d 641, 652–53 (3d Cir.1993) (for Section 1962(c) liability, defendant must be shown to have been aware of the general existence of the enterprise).

**23.** Plaintiffs have submitted a letter from Perlberger to Jones dated August 11, 1997 as evidence of the ongoing nature of Jones's relationship with Perlberger and Jones's participation in the scheme to conceal Perlberger's income from Plaintiffs. (Pls.' Opp.) This letter, however, simply demonstrates that Jones was providing accounting services to Perlberger, which has been admitted by Jones. Nothing in this letter creates a genuine issue of material fact that Jones knowingly participated in the alleged fraudulent scheme to conceal Perlberger's income from Plaintiffs.

**24.** Plaintiffs have alleged the existence of an enterprise consisting of the association-in-fact of all of the named Defendants. (Am. Count III at ¶¶ 103, 109, 115, 121.)

**25.** The Accountant Defendants submit an expert report criticizing McPherson's report. (Defts.' Exs. Ex. KK.) To the extent that these two reports create a disputed issue of fact regarding the performance of the Accountant Defendants, the Court finds that such dispute is immaterial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510 (factual dispute is "material" only if it might affect the outcome of the case).

Plaintiffs also rely on the documents underlying the McPherson report as evidence of the alleged control wielded by the Accountant Defendants over the affairs of PLA. For example, Jones prepared a schedule of payments made by PLA to Strausser for the period of September 1, 1989 to May 31, 1991. (Defts.Exs.Ex. HH.) Jones prepared this schedule at Perlberger's request and direction. (Jones Dep. at 17; Perlberger Dep. at 187–190.) Perlberger attached this schedule to a letter that he wrote on August 5, 1991 to Strausser, in which he stated that he should be credited the amount of $85,365.78, which represented amounts paid to Strausser or on her behalf to third parties, excluding her salary from P & H and PLA.[26] (*Id.*)

26. This letter was apparently written after Perlberger and Strausser had ended their personal relationship and during the time that they were attempting to sever their financial entanglements.

27. McPhearson, Plaintiffs' expert, also reviewed letters dated July 28, 1989 and October 10, 1990 from Jones to Perlberger, with attached schedules, relating to P & H's and PLA's "estimated accounts receivables" on contingent fee asbestos cases. (Defts. Exs. Ex HH.) Jones prepared these letters based on information provided by Perlberger. (*Id.*) Both of these letters were introduced as Messody Perlberger's exhibits during the Perlbergers' divorce trial. (Defts.' Reply Exs. Ex. 4, P–93 and P–94.) It was Jones's understanding that Perlberger wanted this information in order to "settle down" Constitution Bank, which had loaned money to Perlberger to start his new law firm. (Jones Dep. at 31–41.) Because the cash basis method of accounting was used to prepare the financial statements for P & H and PLA and because Perlberger had a number of contingent fee asbestos cases, the balance for his law firm was not favorable. (*Id.*) In order to reassure the bank that the firm would be able to stay in business and meet its loan obligations, Perlberger asked Jones to make some adjustments to the cash basis financial statements of the law firm to reflect estimates of settlements anticipated on the asbestos contingent fee cases. (*Id.*)

The parties dispute whether the actions of the Accountant Defendants in not including these "estimated accounts receivables" in the financial statements were below the professional standard of care for accountants. For the reasons set forth above, this disputed fact is immaterial. Consistent with Plaintiffs' theory of this case, Plaintiffs appear to be arguing that P–93 and P–94 constitute evidence of an attempt by the Accountant Defendants to conceal income that had been realized by Perlberger. In other words,

Based on the undisputed evidence concerning the creation of this schedule and the lack of involvement of Jones in its use by Perlberger, Plaintiffs cannot rely on this schedule as evidence to meet the operation or management test.[27] As the Third Circuit explained, "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result." *University of Maryland at Baltimore v. Peat, Marwick, Main & Company,* 996 F.2d at 1539.

Plaintiffs steadfastly maintain that the Accountant Defendants had to be involved in the alleged scheme to defraud them because the Accountant Defendants were privy to financial information on Strausser, Perlber-

although the Accountant Defendants identified these entries as "estimated accounts receivable," these entries actually represented true accounts receivable (*i.e.,* money actually received by P & H or PLA). There are two fatal flaws to this argument. First, P–93 and P–94 were introduced as exhibits in the divorce trial and therefore were not concealed from Plaintiffs or the divorce court. During the divorce trial, Messody Perlberger's counsel cross-examined Jones about these letters. During that examination, Jones testified concerning the difference between an "estimated account receivable" and a true account receivable: "It is the amount that's due from settled cases, an estimated amount is due. Account receivable is when you bill someone $1,000 and then the next day, assuming they haven't paid yet, it's an account receivable ... [Estimated accounts receivable] come in over a period of months. If they [PLA] make a settlement today, they may not get a check from the insurance companies for three or four months or longer sometimes. Sometimes sooner." (Defts' Reply Exs., Ex. 6, Jones Testimony at 383.) Jones denied that the "estimated accounts receivable" were already received. (*Id.*) The Court notes in this regard that Judge Subers ruled in the Perlberger's divorce that *Beasley v. Beasley,* 359 Pa.Super. 20, 518 A.2d 545 (Pa.Super.1986) applied and that Perlberger's asbestos contingent fee cases could not be valued for the purpose of equitable distribution. (Defts.' Exs. Ex. JJ, Judge Subers' October 21, 1991 Opinion in *Perlberger v. Perlberger.*) Second, Plaintiffs have not submitted any evidence that the "estimated accounts receivable" entries actually represented income that had been realized (*i.e.,* received) by Perlberger and that the Accountant Defendants knew that such income had been received but prepared false financial statements for P & H and PLA. For these reasons, the Court finds that Plaintiffs have failed to raise a genuine issue of material fact concerning the "estimated accounts receivables."

ger, and Perlberger's various business entities. Perhaps even more significant in the eyes of the Plaintiffs is that Jones served as Perlberger's expert in the Perlbergers' divorce proceedings. In that capacity, he gave his professional opinion on the net disposable income of Perlberger. Jones's opinion, not surprisingly, differed from the opinion given by Messody Perlberger's expert. Plaintiffs appear to hold the Accountant Defendants, in general, and Jones, in particular, responsible for what Plaintiffs believe was an unfair equitable distribution of the marital assets and spousal and child support award. Despite Plaintiffs' strongly held beliefs about the Accountant Defendants, the expert opinion rendered by Jones and the Accountant Defendants' knowledge of the finances of Strausser, Perlberger, and Perlberger's various business entities, without more, cannot defeat the Accountant Defendants' right to summary judgment. The Court concludes that the Accountant Defendants functioned as an independent entity that at most provided accounting services to the alleged RICO enterprise; the Accountant Defendants did not participate, either directly or indirectly, in the conduct of the alleged enterprise's affairs through a pattern of racketeering. Therefore, Plaintiffs' Section 1962(c) RICO claim against the Accountant Defendants fails as a matter of law.[28]

### 3. Conclusion

Under Rule 56, Plaintiffs must demonstrate that genuine issues of material fact exist to support their claims. An essential element of Plaintiffs' RICO claim against the Accountant Defendants is that they used the telephones or the U.S. mails to assist Perlberger in his alleged efforts to conceal his income from Plaintiffs and the divorce court. Plaintiffs have failed to make a factual showing that the Accountant Defendants engaged in any acts of racketeering activity, were aware of the existence of the alleged RICO enterprise, or agreed to participate in the alleged enterprise. Moreover, Plaintiffs have failed to make a factual showing that the Accountant Defendants had a role in directing the affairs of the alleged enterprise. Therefore, Plaintiffs' RICO claim against the Accountant Defendants fails as a matter of law.

### B. Fraud

Pennsylvania law requires a plaintiff alleging fraud to prove the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the

28. Plaintiffs also have raised RICO claims against the Accountant Defendants under Sections 1962(a), (b), and (d). All of these claims fail as a matter of law. Section 1962(a) was "primarily directed at halting the investment of racketeering proceeds into legitimate businesses, including the practice of money laundering." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1187 (3d Cir.1993) (quotation and citation omitted). In order to establish a Section 1962(a) claim, Plaintiffs must prove that the Accountant Defendants (1) received money from a pattern of racketeering, (2) invested that money in an enterprise, and (3) that the enterprise affected interstate commerce. *Id.* (citing *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165 (3d Cir. 1989)). In addition, Plaintiffs must demonstrate that their injury was caused by the use or investment of income in the enterprise and distinct from any alleged injury caused by the predicate acts themselves. *Id.* Plaintiffs have failed to adduce any evidence to support their claim under Section 1962(a).

In order to establish a claim under Section 1962(b), Plaintiffs must show "injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts." *Id.* at 1189. Such an injury may be shown where the owner of an enterprise infiltrated by the defendant through racketeering activities is injured by the defendant's acquisition or control of the enterprise. *Id.* at 1190 (citing *Casper v. Paine Webber Group, Inc.*, 787 F.Supp. 1480, 1494 (D.N.J.1992)). Plaintiffs also "must establish that the interest or control of the RICO enterprise by the person is as a result of racketeering." *Id.* Plaintiffs have failed to adduce any evidence to support their claim under Section 1962(b).

Section 1962(d) makes it unlawful to violate Sections 1962(a), (b), or (c). *United States v. Console*, 13 F.3d at 650. Because Plaintiffs' claims under Sections 1962(a)–(c) fail as a matter of law, Section 1962(d) also necessarily fails. Moreover, in order to establish a Section 1962(d) violation, Plaintiffs must demonstrate that the Accountant Defendants knowingly agreed to participate in the enterprise through a pattern of racketeering. *Id.* at 653. Plaintiffs have failed to adduce any such evidence.

misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (Pa.1994). To the extent that Plaintiffs' fraud claim is based on the non-disclosure by Defendants of a material fact, this type of claim "has the same elements as the tort of intentional misrepresentation except that in a case of intentional non-disclosure the party intentionally conceals a material fact rather than making an affirmative misrepresentation." *Id.* at 889 n. 12.

■ Under Pennsylvania law, "in order to submit an issue of fraud to a jury ..., a party must present clear, precise, and convincing evidence of the elements of fraud.... [T]he standard is higher than a mere preponderance of evidence." *Pittsburgh Nat'l Bank v. Larson,* 352 Pa.Super. 250, 507 A.2d 867, 869 (Pa.Super.1986).

■ Plaintiffs have not submitted any material evidence to support the required elements of their fraud claim against the Accountant Defendants. In particular, there is no evidence that the Accountant Defendants made any false representations or concealed any material facts related to the alleged fraudulent scheme to conceal the true value of Perlberger's income. Under these circumstances, Plaintiffs' fraud claim against the Accountant Defendants fails as a matter of law.

### C. *Intentional Infliction of Emotional Distress*

■ Although the Pennsylvania Supreme Court has not yet decided whether a cause of action for intentional infliction of emotional distress is cognizable under Pennsylvania law, the United States Court of Appeals for the Third Circuit ("Third Circuit") has consistently predicted that the Pennsylvania Supreme Court will recognize this tort. *Pavlik v. Lane Ltd./Tobacco Exporters Int'l,* 135 F.3d 876, 890 (3d Cir.1998). The Third Circuit has also predicted that Pennsylvania would generally follow the basic formulation of the tort found in Section 46 of the Restatement (Second) of Torts. *Id.*

Section 46 provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it for such bodily harm." Restatement (Second) of Torts § 46 (1965). Section 46 liability will only be found where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, comment d; *Trans Penn Wax Corp. v. McCandless,* 50 F.3d 217, 232 (3d Cir.1995). Recovery under Section 46 has been "highly circumscribed". *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988, 991 (Pa.1987).

■ As set forth above, Plaintiffs have failed to submit material evidence to support their contention that the Accountant Defendants committed the alleged acts that underlie Plaintiffs' claims against them. Without a factual foundation, Plaintiffs' claim of intentional infliction of emotional distress against the Accountant Defendants fails as a matter of law.[29]

### V. CONCLUSION

For the foregoing reasons, the Court will grant summary judgment in favor of the Accountant Defendants and against Plaintiffs on all claims.

---

**29.** In their Motion for Summary Judgment, the Accountant Defendants also argue that Plaintiffs' claims are barred by the applicable statutes of limitations and by the doctrine of collateral estoppel and that Plaintiffs' case should be dismissed on public policy grounds. It is unnecessary for the Court to reach these arguments.