### In re IKON OFFICE SOLUTIONS, INC. SECURITIES LITIGATION.

**Whetman**

v.

**Ikon.**

### No. MDL 1318.

United States District Court,
E.D. Pennsylvania.

March 1, 2000.

Deborah R. Gross, Law Offices of Bernard M. Gross, P.C., Philadelphia, PA, Robert P. Frutkin, Savett, Frutkin, Podell and Ryan, P.C., Philadelphia, PA, Lynn Lincoln Sarko, Keller Rohrback, Seattle, WA, Britt L. Tinglum, Keller, Rohrback, LLP, Seattle, WA, Jerome M. Congress, Milberg, Weiss, Bershad, Hynes & Lerach LLP, New York, NY, Douglas Risen, Berger & Montague, Philadelphia, PA, Patrick Slyne, Stull Stull & Brody, New York, NY, for Philip Cohen, Sandra Cohen.

Todd S. Collins, Berger & Montague, P.C., Philadelphia, PA, Jules Brody, Aaron L. Brody, Stull, Stull & Brody, New York, NY, Jared Specthrie, Samuel H. Rudman, Milberg, Weiss, Bershad, Hynes & Lerach, New York, NY, Robert P. Frutkin, Savett, Frutkin, Podell and Ryan, P.C., Philadelphia, PA, Lynn Lincoln Sarko, Keller Rohrback, Seattle, WA, Britt L. Tinglum, Keller, Rohrback, LLP, Seattle, WA, Jerome M. Congress, Lee A. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach LLP, New York, NY, Juli E. Farris, Keller Rohrback, Seattle, WA, for Randy Leach, Judy Leach, Oliver Scofield, Dan Watson, Frederick L. Goldfein, Stanley Knapp, Lawrence Porter, Gerard J. Galiger.

Thomas B. Roberts, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA,

Rory O. Millson, Alan J. Hruska, Thomas G. Rafferty, Cravath, Swaine & Moore, New York, NY, John G. Harkins, Jr., David J. Creagan, Harkins Cunningham, Philadelphia, PA, Eleanor Morris Illoway, Harkins Cunningham, Philadelphia, PA, Gerald A. Ford, Cravath, Swaine & Moore, New York, NY, Miriam Hechler Baer, Andrew G. Gordon, Cravath, Swaine & Moore, New York, NY, for Ikon Office Solutions, Inc., James J. Forese, Kurt E. Dinkelacker, Michael J. Dillon.

Jacob A. Goldberg, Berger and Montague, P.C., Philadelphia, PA, Lynn Lincoln Sarko, Keller Rohrback, Seattle, WA, for Philadelphia Group.

Rory O. Millson, Cravath, Swaine & Moore, New York, NY, Miriam Hechler Baer, Andrew G. Gordon, Cravath, Swaine & Moore, New York, NY, for William F. Drake.

Marc Gary, Mayer, Brown & Platt, Washington, DC, Edward M. Posner, Drinker Biddle & Reath LLP, Philadelphia, PA, Renee Narducci Battisti, Drinker Biddle & Reath LLP, Philadelphia, PA, Gary A. Orseck, Kathryn Schaefer, Lawrence S. Robbins, Mayer, Brown & Platt, Washington, DC, Lily Fu Swenson, Mayer, Brown & Platt, Washington, DC, for Ernst & Young LLP.

E. Graham Robb, Weber, Goldstein Greenberg & Gallagher, Philadelphia, PA, for Julia Whetman, Judy Peterson.

Andrew B. Clauss, Cozen and O'Connor, Philadelphia, PA, Charles J. Glasser, Jr., Willkie, Farr & Gallagher, New York, NY, Richard L. Klein, Willkie, Farr & Gallagher, New York, NY, for Bloomberg News.

Ron Kilgard, Gary A. Gotto, Dalton Gotto Samson & Kilgard, Phoenix, AZ, Roger H. Hoole, Hoole & King, Salt Lake City, UT, for Julia Whetman and Judy Petersen.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

This case was originally filed in the District of Utah as *Whetman v. Ikon Office Solutions, Inc., et al.*, but was transferred to this court by order of the Judicial Panel on Multi–District Litigation. *See* JPMDL Order of December 2, 1999. Now before the court is the defendants' motion to dismiss the seventh and eighth causes of action in the Second Amended and Supplemental Complaint, which allege, respectively, violations of the Racketeer Influenced and Corrupt Organizations Act and breach of fiduciary duty under the Employee Retirement Income Security Act of 1984.[1]

### I. Background

Although the court will discuss the allegations in more detail as appropriate, the gist of plaintiff Julia Whetman's complaint is that her former employer, Ikon Office Solutions,[2] and some of its employees and officers systematically engaged in improper accounting, leasing, and billing procedures in order to inflate Ikon stock artificially and to permit certain individuals to receive large bonuses. Whetman claims that she became aware of these irregularities in the course of her employment with Ikon and was demoted and ultimately constructively terminated because of her efforts to bring these improprieties to the attention of Ikon's headquarters and other authorities.

As is most relevant to the present motion to dismiss, two of the complaint's eight counts allege violations of RICO and ERISA. The RICO count claims that eight named individuals and Ikon itself conspired to commit mail fraud, wire fraud, and the interstate transportation of money and property obtained through fraud or theft. Whetman alleges that she was demoted and fired to further this conspiracy. The eighth count alleges that

---

1. A separate motion for class certification is also pending in this case with respect to the ERISA allegations. This memorandum does not address those issues.

2. Ikon supplies copiers, printing systems, and similar services in the United States and Europe. *See In re Ikon Office Solutions, Inc. Sec. Litig.,* 66 F.Supp.2d 622, 625 (E.D.Pa. 1999).

Ikon itself and eight "individual fiducia-ries" breached their fiduciary duties under ERISA in a variety of ways, including failing to inform participants of the compa-ny's troubled finances and permitting the investment of the employer's matching contribution to remain solely in Ikon secu-rities.[3]

## II. Choice of Law

█ Because this matter will likely arise again in the course of this litigation, some comments on the applicable law are in order. This court will follow the holding of *In re Korean Air Lines Disaster*, 829 F.2d 1171 (D.C.Cir.1987), and apply Third Circuit law as binding precedent, although it will give "close consideration" to the law of the Tenth Circuit, the transferor circuit, as appropriate. *Id.* at 1176. This court agrees that "[a]pplying divergent interpre-tations of the governing federal law to plaintiffs, depending solely upon where they initially filed suit, would surely reduce the efficiencies achievable through consoli-dated preparatory proceedings." *Id.* at 1175.[4]

## III. RICO [5]

█ Defendants argue that the court must dismiss count seven, alleging RICO violations. First, defendants argue that the Private Securities Litigation Reform Act (PSLRA) bars Whetman's RICO claim because she alleges predicate acts that are actionable as securities fraud. Second, de-fendants argue that the RICO claims are not pleaded with the particularity required by Federal Rule of Civil Procedure 9(b). Finally, defendants argue that termination in retaliation for whistle-blowing cannot serve as a cognizable injury under RICO, although, acknowledging that the Supreme Court has granted *certiorari* on this issue, defendants suggest that the court defer ruling on this and related issues.

Following amendment by the PSLRA in 1995, the RICO statute reads as follows:

> Any person injured in his business or property by reason of a violation of sec-tion 1962 of this chapter may sue there-for in any appropriate United States district court and shall recover threefold the damages he sustains . . ., except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

18 U.S.C. § 1964(c); *see also Bald Eagle Area Sch. Dist. v. Keystone Fin.*, 189 F.3d 321, 327 (3d Cir.1999) (describing circum-stances of revision). To have standing to pursue a claim under section 1964(c), "a plaintiff must first demonstrate that the defendant committed a violation of one or more subsections of section 1962, and sec-ond, that the violation was a substantial

---

3. On this count, there are two named plain-tiffs: Julia Whetman and Judy Peterson.

4. Other courts in this jurisdiction have ap-plied *In re KAL* in addressing similar choice of law questions. *See In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 369 n. 8 (3d Cir.1993) (assuming without deciding that district court's decision to follow *In re KAL Disaster* was correct); *In re Asbestos Prods. Liab. Litig.*, MDL No. 875, 1996 WL 239863, at *3 (E.D.Pa. May 2, 1996) (applying same rule); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1996 WL 221784, at *7 n. 5 (E.D.Pa. Apr.8, 1996) (same); *No-vodzelsky v. Astor, Weiss & Newman*, Civ. A. No. 94–2407, 1994 WL 527281, at *3 (E.D.Pa. Sept.22, 1994) (same). Also, all the parties commenting on the choice-of-law issue con-cluded that Third Circuit law should govern.

5. A court should grant a motion to dismiss only if the defendant establishes that "plain-tiffs could prove no set of facts that would entitle them to relief." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996); *see also Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980) (stat-ing that burden is on moving party). The court must determine whether "under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief" and must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami*, 82 F.3d at 65. The court should not inquire as to wheth-er the plaintiffs would ultimately prevail but only whether they are entitled to offer evi-dence. *See id.* at 65.

cause of the injury to his business or property." *Rehkop v. Berwick Healthcare Corp.*, 95 F.3d 285, 288 (3d Cir.1996).

In this case, plaintiff alleges that she was injured by defendants' violation of 18 U.S.C. § 1962(d), which states, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *Id.* "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose.... Additional elements include agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166–67 (3d Cir.1989). The complaint, accordingly, includes allegations that the defendants conspired to violate or violated 18 U.S.C. § 1962(a), (b), and (c). *See* 2d Am. & Supp.Compl. ¶¶ 174–76. As to the section 1962(d) conspiracy, plaintiff claims that she was injured by being demoted and fired because of her efforts to halt the improprieties at Ikon, which, as described in more detail subsequently, are pled as predicate acts.

The court will look at defendant's argument pertaining to injury first, as it provides necessary context for the subsequent dispositive arguments. In its initial motion to dismiss, the defendants argued that an injury does not confer standing under 18 U.S.C. § 1962(d) unless it comes from the underlying substantive RICO violations. Because termination and demotion are not included as racketeering acts, most other circuits hold that such claims cannot

serve as a cognizable injury under 18 U.S.C. § 1962(d). *See Rehkop*, 95 F.3d at 290 & n. 6 (acknowledging majority position). The Third Circuit is in the minority of circuits that have held to the contrary. *See Shearin*, 885 F.2d at 1162 (An "allegation that [plaintiff] was fired in furtherance of a conspiracy in violation of 18 U.S.C. § 1962(d) states a claim for relief under section 1964(c)"); *see also Rehkop*, 95 F.3d at 285 (reiterating this holding). Thus, under Third Circuit law, the fact that the only injuries alleged are demotion and firing would not require dismissal.[6]

█ The more difficult question is whether plaintiff's RICO claims are barred by the PSLRA amendments previously described. The predicate acts alleged in the complaint are various acts of mail fraud, wire fraud, and interstate transportation of money or property obtained by theft or fraud. *See* 2d Am. & Supp.Compl. ¶¶ 167–71. The defendants argue that these acts are actionable as securities fraud, notwithstanding their designation here as other causes of action. They stress that the same allegations described as predicate acts in Whetman's complaint form the basis of the securities fraud complaint in Pennsylvania and that the parties have actually cross-referenced each others' allegations. *See* Pa.2d Am.Compl. ¶¶ 48–49 (referring to Whetman's allegations); Whetman 2d Am. & Supp.Compl. ¶¶ 189–90 (incorporating securities allegations in Pennsylvania case into her ERISA count). They also note that, at least in the ERISA count, Whetman acknowledges that the purported fraud inflated the price of the Ikon stock used as "currency" in acquiring

---

6. Defendants acknowledge this binding precedent but note that the Supreme Court recently granted *certiorari* in *Beck v. Prupis*, 162 F.3d 1090 (11th Cir.1998), *cert. granted*, — U.S. —, 119 S.Ct. 2046, 144 L.Ed.2d 213 (1999), to address this very question. They suggest that this court defer ruling pending the Supreme Court's decision. In their initial motion to dismiss, defendants also raised a variety of arguments stating that plaintiff had not properly pled injury under any of 18 U.S.C.

§ 1962's subsections and that she could not therefore plead injury under 18 U.S.C. § 1962(d). In their submissions to this court, defendants acknowledge that these claims are also precluded by Third Circuit case law and similarly request that the court defer ruling on these issues. *See* Defs.Resp.Mem. of Jan. 20, 2000, at 21 n. 7. Given its resolution of the predicate act analysis, however, the court need not decide whether deferral or denial would be appropriate.

other businesses. *See* 2d Am. & Supp. Compl. ¶ 190.

In response, plaintiff argues that even if one result of the accounting improprieties constituting the predicate acts was inflation of stock prices, her complaint alleges primarily that the alleged frauds were undertaken to permit certain individuals to receive large bonuses. *See* 2d Am. & Supp.Compl. ¶¶ 32–38. Plaintiff also points out that she was fired, allegedly in retaliation for her whistleblowing activities, long before the charge to earnings taken in August 1998 precipitated the securities fraud action.

The court finds that under the Third Circuit's decision in *Bald Eagle,* 189 F.3d at 321, the actions alleged in support of the RICO count are actionable as securities fraud and therefore cannot constitute proper predicate acts necessary to sustain a claim·under 18 U.S.C. § 1962(d). *See id.* at 327 (noting that the PSLRA has eliminated conduct actionable as securities fraud "as a predicate act for a private cause of action under RICO"); *Mathews v. Kidder, Peabody & Co., Inc.,* 161 F.3d 156, 157 (3d Cir.1998) (stating that the PSLRA removes securities fraud as a predicate act). The plaintiffs in *Bald Eagle* alleged that they were directly harmed by an elaborate Ponzi scheme that had already been the subject of SEC action. The district court dismissed the complaint based on the PSLRA. On appeal, the plaintiffs claimed that various actions taken in the course of the securities fraud were not, themselves, actionable as securities fraud and thus could be pled as RICO predicate acts without running afoul of the PSLRA. *See Bald Eagle,* 189 F.3d at 329.[7] The Third Circuit rejected this argument:

The School Districts' position ignores two significant and intertwined facts. First, as noted earlier, the RICO Amendment removed securities fraud as a predicate offense in a civil RICO action. Section 10(b) of the Securities Exchange Act of 1934 ... and SEC Rule 10b–5 ... are directed at fraud *"in connection with* the purchase or sale" of securities. The School Districts' position ignores the reality that the same set of facts can support convictions for mail fraud, wire fraud, bank fraud and securities fraud without giving rise to any multiplicity problems.... Consequently, a plaintiff cannot avoid the RICO Amendments' bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud.

*Id.* at 329–30.

Similarly, in the present case, the predicate acts alleged by plaintiff were undeniably undertaken in connection with the alleged securities fraud. The court cannot accept plaintiff's implicit contention that because the securities aspects of this case are pled in a separate ERISA count, the bases for which were discovered at a later time period than the bases for the RICO count, plaintiffs have avoided the bar of the RICO amendment. Particularly at the hearing on this matter, plaintiffs put much emphasis on the portion of *Bald Eagle* that stresses that district courts should not inquire as to whether the conduct alleged is " 'intrinsically connected to, and dependent upon' conduct actionable as securities fraud." *Id.* at 330 (citing lower court opinion).[8] The court does not rule, however,

---

7. The *Bald Eagle* plaintiffs conceded that some of the predicate acts would have been actionable as securities fraud. They also argued, however, that the predicate acts consisting of "obtaining *deposits* of funds, failing to maintain collateral, failing to maintain custody of funds, paying out more funds to withdrawing clients than the fair value of their account, providing false trust statements (*after*

deposits are obtained), and lying to bank regulators" did not constitute securities fraud. 189 F.3d at 329 (citations, internal punctuation omitted).

8. Admittedly, it is a very fine line between an act taken "in connection with" the sale or purchase of securities and actions that are "intrinsically connected to and dependent

that the underlying financial improprieties were "intrinsically connected to" the securities fraud: the underlying financial improprieties are actionable as securities fraud, as clearly demonstrated by the ERISA claim and the Pennsylvania complaint as a whole. As the *Bald Eagle* court explained in rejecting a similar argument, "conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities." 189 F.3d at 330.

Plaintiff argues that even if the court finds that the predicate acts were actionable as securities fraud, her conspiracy claim is not precluded by the revisions to the RICO statute because she was harmed by defendants' overt acts in furtherance of the conspiracy of demoting and firing her, which are obviously not actionable in securities fraud. Defendants respond, however, that even if the injury of being demoted and fired is not actionable as securities fraud and is a cognizable injury, plaintiff is left with no predicate acts. That is, defendants state "the issue before the Supreme Court in *Beck v. Prupis* is irrelevant as to whether a RICO cause of action can exist at all if the plaintiff has failed to plead any predicate acts to support the RICO claim." Defs. First Reply Mem. at 9.

The court agrees with defendants that it must dismiss the RICO count, regardless of the injury alleged, because of its finding that the predicate acts are actionable as securities fraud. The Third Circuit's expansive interpretation of injury does not suggest that a plaintiff can proceed on a RICO claim in the absence of proper predicate acts, even if that action is brought under subsection (d). "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir.1993) (affirming dismissal of section (d) claim when plaintiff upon" conduct actionable as securities fraud.

did not establish a "viable claim" under any of other subsections); *see also Annulli v. Panikkar*, 200 F.3d 189, 202 (3d Cir. 1999) (affirming dismissal of § 1962(c) and § 1962(d) claims because of failure to establish predicate acts).

Although plaintiff relies on *Rehkop*, that case is distinguishable. Believing that the Third Circuit's holding in *Shearin* had been undercut by *Lightning Lube*, the district court in *Rehkop* dismissed plaintiffs' claims under section 1962(d) after finding that plaintiff could not proceed under 1962(c) by alleging only an injury of termination. *See* 95 F.3d at 289. The Third Circuit reaffirmed its *Shearin* holding that a plaintiff can assert a 1962(d) claim, even if the only injury was firing, so long as the other elements of a claim under one of the other subsections were met. *See id.* at 290. *Rehkop* did not hold, however, that a plaintiff who has failed to establish predicate acts as required by the other subsections may proceed on a conspiracy claim. *See id.* ("The problem in *Lightning Lube* was that the actions alleged to constitute violations of subsections 1962(a), (b), and (c) were not violations of these subsections, and thus they also failed to serve as the object of a section 1962(d) conspiracy.").

As the court dismisses the RICO count because plaintiff has not properly pled any predicate acts, it is unnecessary to resolve defendants' claims that plaintiff did not comply with Rule 9(b).

## IV. ERISA

The eighth count of the complaint alleges breaches of fiduciary duty under ERISA and names Ikon itself and eight individuals as defendants. Defendants argue first that the ERISA count must be dismissed because plaintiffs have failed to plead fraud with the specificity required by Federal Rule of Civil Procedure 9(b). Defendants also argue that Ikon was a settlor, rather than a fiduciary, and that this requires that the claims against Ikon *Bald Eagle,* 189 F.3d at 330.

be dismissed. Finally, defendants claim that the individual defendants are not liable for breach of fiduciary duty because they had no authority regarding investment decisions.

### A. Rule 9(b) Claims

Defendants contend that plaintiffs' ERISA claims must be dismissed, at least in part, based on failure to plead allegations of fraud with particularity. *See* Fed. R.Civ.P. 9(b). Specifically, defendants state that plaintiffs (1) do not identify any details of the circumstances surrounding the ERISA defendants' participation in fraudulent practices, (2) do not plead that the ERISA defendants had knowledge of the allegedly fraudulent practices, and (3) do not set forth the time, place, or contents of alleged misrepresentations, or the individual making such statements. The defendants argue that plaintiffs have not pled with particularity with respect to either the individual defendants or to Ikon itself.

The plaintiffs agree that if the ERISA claim sounds in fraud it must meet the requirements of Rule 9(b). Plaintiffs state, however, that as to the individual ERISA defendants, "Whetman and Peterson do not now allege that the individual ERISA defendants participated in these frauds.... Rather, the claim against the individual ERISA Defendants is that they did not protect the participants from the consequences of this misconduct." Plfs. Resp. to Mot. at 9–10. Plaintiffs contend that ERISA complaint alleged against the individual defendants claims a negligent, rather than a fraudulent, breach of fiduciary duty, and that they are bound only by the more liberal notice pleading rules. *See* Fed.R.Civ.P. 8(a); *see also Concha v. London*, 62 F.3d 1493, 1502–03 (9th Cir.1995) (noting that ERISA need not be pleaded as fraud and that, if it is not, Rule 9(b) does not apply). Plaintiffs agree that the complaint alleges that one of the ERISA defendants, Ikon itself, acted fraudulently, but argue that Ikon's fraud is pled in

adequate detail in the body of the complaint. *See* Resp. to Mot. at 10.

Contrary to plaintiffs' assertions, while the bulk of the ERISA count against the individual defendants does not allege fraud, some specific allegations do. The plaintiffs seemingly allege that all the ERISA defendants participated in fraudulent practices, *see* 2nd Am. & Supp.Compl. ¶¶ 198(d), 199(e), and the complaint also alleges that the ERISA defendants "misled" participants by "telling employees that they would receive the employer's match only if they directed that their contribution be invested in employer stock[.]" *Id.* ¶ 199. Similarly, the complaint claims that the ERISA defendants "knowingly participated in or undertook to conceal a breach or breaches of fiduciary duty." *Id.* ¶ 201. Also, as plaintiffs concede, the count alleges fraud by Ikon itself.

The court finds that Rule 9(b) does not require the dismissal of these allegations. The purpose of Rule 9(b) is to "provide notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges." *Rolo v. City Investing Co.*, 155 F.3d 644, 658 (3d Cir.1998) (citations omitted). Obviously, allegations of time, place, and date would meet this requirement. *See id.* Allegations that set forth the details of the alleged fraud may also meet these requirements, and plaintiffs "are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir.1984) (finding that plaintiff had met burden when it incorporated into the complaint a list of the pieces of machinery allegedly subject to fraud and otherwise described the "nature and subject" of the supposed misrepresentations); *Saporito v. Combustion Eng'g, Inc.*, 843 F.2d 666, 675 (3d Cir.1988), *judgment vac'd on other grounds*, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989) (stating that plaintiff did not meet burden when it pled in very general terms, and did not allege who

made or received fraudulent statements). The Third Circuit has repeatedly cautioned that courts should apply this rule flexibly, particularly when ·the information at issue may be in the defendants' control. *See, e.g., Seville,* 742 F.2d at 791.[9]

▮ The court concludes that the limited allegations of fraud are pleaded with sufficient particularity to give the defendants notice of the misconduct with which they have been charged, particularly given the extensive discussion of the fraud allegedly engaged in by Ikon itself, which is described in painstaking detail. The few allegations pertaining to fraudulent conduct by the individual defendants refer to information that is largely within the defendants' control, and the court believes it would be inappropriate to penalize the plaintiffs at this stage for their lack of specific information, given the general flexibility with which the Third Circuit instructs courts to apply Rule 9(b).

### B. The Motion to Dismiss Related to Fiduciary Status

### 1. The ERISA Plan and Fiduciary Obligations Generally

At this stage in the litigation, only a minimal description of the benefit plans at issue is required.[10] The plan was originally adopted by Ikon's predecessor, Alco Standard, on January 1, 1975. In October 1, 1995, the plan was renamed the Alco Standard Corporation Retirement Savings Plan. As of January 1, 1997, the plan was renamed the Ikon Office Solutions, Inc. Retirement Savings Plan. On October 1, 1995, the plan was amended to permit the participants to invest their contributions in one of six funds, including the Alco/Ikon stock fund. At all times, including after October 1, 1995, however, Alco/Ikon invested its matching contribution in its own stock. In other words, as defendants note,

prior to October 1, 1995, the plan was a true Employee Stock Ownership Plan (ESOP), and, as such, exempt from the ordinary ERISA requirement of diversification. *See* 29 U.S.C. § 1104(a)(2). After October 1, 1995, the employer's matching contribution was maintained as an ESOP, although the employees' own contribution became a self-directed 401(k). *See* Alco Standard Corporation Retirement Savings Plan, Amended and Restated Effective October 1, 1995 §§ 11.6, 11.7 (stating that employer contribution would go only to its own stock); *see also* Summary Plan Description of the Ikon Office Solutions, Inc. Retirement Savings Plan at 3 (noting that employer contributions will be invested solely in Ikon stock); *id.* at 5–6 (describing funds into which employees could direct their contribution).[11]

As numerous courts have noted, ERISA was enacted in large part to ensure the financial soundness of employee benefit plans. "ERISA seeks to accomplish this goal by requiring such plans to name fiduciaries and by giving them strict and detailed duties and obligations." *Moench v. Robertson,* 62 F.3d 553, 560 (3d Cir.1995). ERISA outlines the applicable standard as the prudent person standard of care:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

  (i) providing benefits to participants and their beneficiaries; and

  (ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the

---

**9.** Even if the court were to rule otherwise, the appropriate response would be to permit plaintiffs to amend the complaint. *See, e.g., Saporito,* 843 F.2d at 675.

**10.** There is no suggestion that the plans are not qualified under ERISA.

**11.** These plans were filed of record while the case was in the District of Utah.

conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a).

■ Fiduciaries may be either named by the plan, *see* 29 U.S.C. § 1102(a)(1), or they may be individuals who qualify as fiduciaries as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). As this definition suggests, one is an ERISA fiduciary only to the extent that one has discretion. *See, e.g., Marks v. Independence Blue Cross,* 71 F.Supp.2d 432, 434 (E.D.Pa.1999).

2. Ikon's Fiduciary Status

■ Although not part of the original motion to dismiss, in supplemental papers requested by the court, the defendants have advanced two additional arguments in support of dismissal.[12] First, defendants argue that Ikon itself is not subject to liability under ERISA either for requiring

or continuing to require that Ikon matching funds be invested only in employer stock or for imprudently selecting and offering employer stock as an investment choice. The gist of defendants' argument is that in so doing, "Ikon acted as a settlor who was designing the terms of the Plan, and, as such, Ikon has no fiduciary duty as to those decisions." Defs.Resp.Mem. of Jan. 20, 2000, at 11. The plaintiffs respond that they do not object to the structure of the plan per se; rather, the "ERISA plaintiffs' complaint against IKON is not how it structured the Plan, but how it exercised discretionary authority with respect to the management of it, in other words its fiduciary function." Plfs. Reply Mem. of Feb. 7, 2000, at 20. Plaintiffs assert that Ikon provided misinformation to the plan participants about the risks of investing in Ikon stock from 1994 until the present.

Defendants refer to numerous cases suggesting that, ordinarily, employers cannot be held liable for breach of fiduciary duty under ERISA for design decisions. For example, after analyzing several cases addressing similar issues, the Third Circuit stated that "ERISA's concern is with the *administration* of benefit plans and not with the precise design of the plan." *Nazay v. Miller,* 949 F.2d 1323, 1329 (3d Cir.1991) (holding that employer's decision to include a penalty provision in its plan did not violate ERISA); *see also Lockheed Corp. v. Spink,* 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (holding that employer was not acting as fiduciary when adopting amendments establishing an early retirement program because such decisions related to "plan design").

As defendants themselves acknowledge, however, fiduciary status is related to particular acts, and while an employer may be acting analogously to a settlor when designing a plan, at such point that the employer begins to exercise "discretionary authority or control over plan management

---

**12.** The court notes that these arguments were previously raised by defendants in their opposition to plaintiff's motion to amend the complaint to include ERISA class allegations.

or administration," it acts as a fiduciary. *Lockheed Corp.*, 517 U.S. at 890, 116 S.Ct. 1783 (citations, internal punctuation omitted). For example, in *Varity Corporation v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), employees alleged that their employer, which was also the plan's administrator, had deliberately provided false information to induce employees to withdraw from a plan and forfeit their benefits. The employer argued that, in so doing, it was acting as an employer and not a fiduciary. The Supreme Court agreed with the lower courts' conclusions that by holding a meeting about benefits, providing documents comparing past and future benefit plans, and by assuring employees that their benefits would remain the same, the employer was acting as a plan administrator and was thus subject to fiduciary duties. *See id.* at 501, 116 S.Ct. 1065.[13]

Similarly, in *In re Unisys Savings Plan Litigation*, 74 F.3d 420 (3d Cir.1996), plaintiffs asserted that Unisys Corporation violated ERISA's fiduciary duty of disclosure by providing participants "with misleading or incomplete communications regarding ... investments and ... financial condition." *Id.* at 425. The defendant in that case argued that because the participants had "control" over their account assets as defined by 29 U.S.C. § 1104(c) in that they selected among various funds to direct their contribution, it had no fiducia-

ry duty under 29 U.S.C. § 1104(a). The Third Circuit rejected that claim, stating

> We can discern no reason why our admonitions that 'when a [fiduciary] speaks, it must speak truthfully[ ]', and when it communicates with plan participants and beneficiaries it must 'convey complete and accurate information that [is] material to [their] circumstance,' should not apply to alleged material misrepresentations made by fiduciaries to participants regarding the risks attendant to a fund investment, where, as here, the participants were charged with directing the investment of their contributions among the Plans' various funds and the benefits they were ultimately provided depended on the performance of their investment choices.

*Id.* at 442 (citations omitted); *see also Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir.1993) (holding that, even when making plan changes (i.e., design changes), an administrator must speak truthfully). Partly because the record showed that the employer made communications "regarding the nature and risks associated with investments," the *Unisys* court reversed the district court's grant of summary judgment. *Id.* at 443.[14]

In short, it is premature to rule that Ikon did not act or could not have acted as a fiduciary. The resolution of this matter will require further factual development, including discussion of what statements Ikon made and whether they had a material effect on the participants' decisions.[15]

**13.** "Conveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation, would seem to be an exercise 'appropriate' to carrying out an important plan purpose. After all, ERISA itself specifically requires administrators to give beneficiaries certain information about the plan." *Varity Corp.*, 516 U.S. at 503, 116 S.Ct. 1065. The court stressed, however, that it did not hold that Varity acted as a fiduciary "simply because it made statements about its expected financial condition or because 'an ordinary business decision turn[ed] out to have and adverse impact on the plan.' " *Id.* (citations omitted).

**14.** Following the appeal of the bench trial held on remand, the Third Circuit ruled that the lower court properly found in favor of the defendants. *See In re Unisys Savings Plan Litig.*, 173 F.3d 145 (3d Cir.1999).

**15.** Defendants argue that the discussed cases must be distinguished because, in most of them, the employer was actually named as a plan administrator, while Ikon is not. The court believes that at the pleading stage, it would be premature to say that Ikon could not have been, in any circumstances, a fiduciary, given both the lack of information regarding its formal role in the plans and the plaintiffs' allegations that Ikon affirmatively

### 3. Individual Defendants' Fiduciary Status

■ Defendants also argue that the individual ERISA defendants cannot be liable for breach of fiduciary duty because they had no authority regarding investment decisions. Specifically, defendants state that they cannot be liable for requiring or continuing to require that Ikon matching funds be invested only in employer stock or for imprudently offering and selecting employer stock as an investment choice because the plan's ESOP component required that they do so. Plaintiffs respond that Third Circuit case law holds that this is not a defense, at least not at the motion to dismiss stage.[16]

The court finds that defendants' arguments, at least at this stage in the pleadings, are governed by the Third Circuit's decision in *Moench v. Robertson*, 62 F.3d 553 (3d Cir.1995). That decision addressed the extent to which "fiduciaries of [ESOPS] [may] be held liable under [ERISA] for investing solely in employer common stock, when both Congress and the terms of the ESOP provide that the primary purpose of the plan is to invest in the employer's securities." *Id.* at 556. Unlike the plan at issue here, the *Moench* plan apparently had no self-directed component, but the basic contention was the same: plaintiffs claimed ERISA violations because throughout "the relevant time period, the Committee regularly invested the ESOP fund in [the employer's] common stock, despite the continual and precipitous drop in its price and despite the Committee's knowledge of [the employer's] precarious condition by virtue of the members' status as directors." *Id.* at 558.[17]

The district court granted the defendants' motion for summary judgment, finding that the fiduciaries could not be liable in this situation, and the Third Circuit reversed. After discussing the difficulties in complying with the seemingly contradictory goals of ERISA and ESOPs, the Third Circuit acknowledged that "when the plaintiff claims that an ESOP fiduciary violated its ERISA duties by continuing to invest in employer securities, the conflict becomes particularly stark." *Id.* at 569. The court noted that in addressing the duties of ESOP fiduciaries, most other circuits, including the Tenth, "have allowed ERISA's strict standards to override the specific policies behind ESOPs." *Id.* As a result, the court held that "in the first instance, an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities." *Id.* at 571. Thus, under the holding of *Moench*, it would be premature to dismiss even a portion of the ERISA complaint without giving plaintiffs an opportunity to overcome the presumption.

In a footnote only, defendants suggest that *Moench* is distinguishable. Defendants first argue that *Moench* is inapplicable because those defendants admitted that they were fiduciaries, while the Ikon defendants deny that they held that status. This is, as plaintiffs point out, a distinction without a difference. The reason the Ikon defendants argue that they are not fiduciaries as to the investment in matching employer stock is that they had no discretion.

involved itself by providing information about the plans to participants.

**16.** Even if correct, the defendant's arguments would seemingly require dismissal only of those claims that relate to the employer's matching contribution. As discussed in the previous section, to the extent that misleading information was provided that might have affected the employees' decisions as to where

to place their own contributions, there could have been a breach of a fiduciary obligation.

**17.** Although much of the *Moench* holding addressed the proper standard of review to be applied to plan interpretations, the parties here do not, at least at this point, raise any such arguments and refer to the plans' provisions in only the most general way.

The defendants in *Moench* apparently conceded at the district court level that they were fiduciaries as a general matter but argued that, as to investment decisions, they could not be held liable for a breach of fiduciary duty because their lack of discretion immunized them under ERISA. *See Moench,* 62 F.3d at 562. The Third Circuit rejected this contention.

The Ikon defendants also argue that *Moench* is distinguishable because the *Moench* defendants "affirmatively demonstrated that they interpreted the plan to confer on them the discretion to diversity investments[.]" Defs.Resp.Mem. of Jan. 20, 2000, at 16 n. 5. While this was undeniably an important part of the court's decision, the Third Circuit suggested that even this fact was not dispositive, stating, "In view of our result, we are not concerned with a situation in which an ESOP plan in absolutely unmistakable terms requires that the fiduciary invest the assets in the employer's securities regardless of the surrounding circumstances. Consequently, we should not be understood as suggesting that there never could be a breach of fiduciary duty in such a case." *Id.* at 567 n. 4. Moreover, the Third Circuit spoke broadly rather than limiting its holding to the facts of the plan at issue, and it contemplated a situation in which a fiduciary might properly "effectuate the purposes of the trust only by deviating from the trust's direction or by contracting out investment decisions to an impartial outsider." *Id.* at 572.

In short, while the plaintiffs will ultimately have a very high burden, the Third Circuit acknowledges that complying with plan requirements that holdings be invested in employer stock might, in some circumstances, constitute a breach of fiduciary duty.

V. Conclusion

The plaintiffs' RICO claim must be dismissed because the only predicate acts pled are precluded by the amendments made by the Private Securities Litigation Reform Act. The ERISA claim, however, is pled with sufficient particularity, and defendants' arguments pertaining to fiduciary status cannot be resolved on the pleadings.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 1st day of March, 2000, upon consideration of Defendants' Motion to Dismiss the RICO and ERISA Causes of Action in the Second Amended and Supplemental Complaint in the case originally captioned as *Julia Whetman v. Ikon Office Solutions, Inc., et al.,* the response thereto, the other submissions of the parties, and after a hearing, it is hereby **ORDERED** that the Motion is **GRANTED** in part and **DENIED** in part. The Motion is **GRANTED** as to the Seventh Count, asserting violations of the Racketeer Influenced and Corrupt Organizations Act, as plaintiffs have failed to plead any predicate acts. The Motion is **DENIED** as to the Eighth Count, alleging violations of the Employee Retirement Security Act of 1974.